**Florence GOLDMAN, Appellant,**

v.

**August BEQUAI, et al., Appellees.**

**No. 92–7197.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 31, 1994.

Decided April 1, 1994.

As Amended April 1, 1994.

Suggestion for Rehearing In Banc Denied May 25, 1994.

---

Sheldon E. Bernstein, Washington, DC, argued the cause for appellant. With him on the briefs was Lawrence M. Mann, Washington, DC.

David P. Durbin, Washington, DC, argued the cause for appellee. With him on the brief was C. Alexander Hewes, Jr., Washington, DC.

Before: WALD, EDWARDS and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In this diversity action, Florence Goldman, a widow in her eighties, appeals a grant of summary judgment against her in her suit alleging that appellee August Bequai, an attorney and long-time friend of Goldman's family, fraudulently induced her to convey to him substantially all of her property shortly after the death of her husband. Appellant brought claims against appellee for fraud and deceit, breach of fiduciary obligation, tortious conversion, and legal malpractice; and against appellee's wife, Mary Ryan Bequai, for breach of fiduciary obligation. After permitting limited discovery, the District Court ruled that Goldman's claims against appellee were barred by the three-year statute of limitations in the District of Columbia. The trial court rejected Goldman's contentions

that the running of the limitations period should have been equitably tolled.

In ruling against Goldman, the District Court found that appellant knew or should have known that she had been injured by August Bequai at the time she conveyed her property to him, rather than four years later when one of the properties was sold and she learned that he had retained half the proceeds. The trial court dismissed appellant's suit against Mary Ryan Bequai for failure to state a claim, ruling that there was nothing in the record to indicate that Goldman and Ms. Bequai had been in a fiduciary relationship.

We uphold the District Court's dismissal of Goldman's claim against Mary Ryan Bequai. However, we reverse the summary judgment granted in favor of August Bequai and remand for further proceedings. The record makes it clear that appellant has alleged facts which, if proven at trial, could serve to equitably toll the statute of limitations under several different doctrines. Under each of these theories, the relevant question is not whether some ill-defined "reasonable plaintiff" should have discovered her injury within the limitations period, but whether it was reasonable for a plaintiff *in Goldman's situation* to have failed to do so. Appellant's complaint raises a number of material factors that are relevant to this inquiry, such as her advanced age, required use of medication for depression, close relationship with August Bequai, and inexperience in business dealings. Any conclusions to be drawn with respect to these conditions are necessarily highly fact-bound; and the facts and inferences to be drawn therefrom are seriously contested. Thus, Goldman's complaint cannot be disposed of on summary judgment.

## I. Background

### A. *Facts of the Case*[1]

Florence Goldman's husband died on October 31, 1985, after a long bout with Alzheimer's and Parkinson's diseases. For several years prior to her husband's death, Goldman cared for him at home. During much of her husband's illness and for some time thereafter, Goldman was under the care of a psychiatrist, who treated her for depression stemming from the strain and grief she experienced because of her husband's declining health. As part of this therapy Goldman was treated with antidepressant drugs, which she alleges had a negative effect on her cognitive processes.

Goldman's Complaint described August Bequai as a long-time friend whom she regarded as almost a member of her family. Bequai in turn described Goldman's husband as a "surrogate father," and stated that both Mr. and Mrs. Goldman often referred to him as their "good son." Affidavit of August Bequai ¶¶ 10, 11, *reprinted in* Joint Appendix ("J.A.") 792. Bequai is an attorney, and has written several books about white-collar crime and served as an adjunct professor or lecturer at several universities. *Id.* ¶ 3 at J.A. 790. Goldman alleged in her complaint that during her husband's illness and after his death, she looked to Bequai as her "adviser and attorney" in her financial affairs. Complaint ¶ 10, *reprinted in* J.A. 4.

In January, 1986, three months after her husband's death, Goldman conveyed to Bequai joint tenancy with a right of survivorship in a condominium in Bethesda, Maryland, and in a partnership interest in property at 423 Massachusetts Avenue, N.W., in Washington, DC. Ten dollars ($10) was given in consideration for the transfer of each property. *See* Deed of Sale of Massachusetts Avenue Property, *reprinted in* J.A. 272; Deed of Sale of Bethesda Property, *reprinted in* J.A. 277. Goldman had no legal counsel or independent advice of any sort, and she alleges that Bequai did not fully explain the nature of the transactions to her. There were no witnesses to the transactions other than the notary, whose commission apparently had expired several months prior to the signing of the deeds.

1. Because this case is before us on appeal from a grant of summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Accordingly, our recitation of the facts is taken chiefly from appellant's submissions. The accuracy of appellant's claims will be tested at trial on remand.

The Massachusetts Avenue property was sold in January, 1990, and the proceeds attributable to the Goldman/Bequai partnership share were distributed to them. Both Bequai and Goldman were represented at the closing by Robert Pollock, an attorney hired by Bequai. Goldman, however, described Pollock as "a flunky who did [Bequai's] bidding." Deposition of Florence Goldman, *reprinted in* J.A. 405. After the sale of the Massachusetts Avenue property, Bequai accompanied Goldman to the bank, where both placed their proceeds in investment accounts that were opened that day. Bequai placed his money in an account he owned jointly with his wife. Goldman placed her share in a joint account with Bequai.

In her deposition, appellant stated that, at least as early as 1986, she, her son (Dennis Goldman), and Bequai had discussed starting a business that would employ both Goldman and her son. Dennis Goldman stated in an affidavit that Bequai had said that he needed to be listed as an owner of the Massachusetts Avenue property in order adequately to represent the Goldmans' interests during negotiations over the sale of the property, and that Bequai told him that the transfer "would be temporary, and solely for the limited purpose of inflating his financial worth on paper" while he looked for a business in which to invest. Affidavit of Dennis Goldman ¶ 2, *reprinted in* J.A. 111–12. Florence Goldman stated that Bequai told her that he needed to be a part owner in order to "participate fully" in negotiations for the sale of the property, and to locate a suitable business opportunity for himself and the Goldmans. Deposition of Florence Goldman, *reprinted in* J.A. 434. Goldman further stated that:

> He said that it was necessary in order to represent me that he had to have his name on the property as a half owner. But all the proceeds from whatever I had, except to live on, would be going into the business and a future for my son and a future for me. That's what we were building on.

*Id.* at J.A. 432–33. According to appellant, "this is why we let him do this, not ever realizing that I was relinquishing my full interest." *Id.* at J.A. 431. Goldman stated that it was her understanding that the purpose of the documents she signed conveying a joint tenancy in her properties to Bequai was: "To give him stature in negotiating for the business for the three of us." J.A. 439. At several points in her deposition, Goldman stated that she relied on Bequai's representations and so did not read the documents she signed.

In August 1987, at Bequai's dictation, Goldman hand wrote a power of attorney authorizing her son to represent her "in all matters pertaining to the sale" of the Massachusetts Avenue property. *See* Power of Attorney, *reprinted in* J.A. 257. The purpose of this power of attorney was ostensibly to allow Dennis Goldman to attend partnership meetings concerning the sale of the property. Florence Goldman indicated that Bequai suggested to her that it would be too much of a strain for her to attend these meetings herself.

Goldman stated in her deposition that her "first inklings" that Bequai had "deceived" her came in June of 1990, after she received the money for the sale of the Massachusetts Avenue property: "His name was on my half. His name was on everything I had: my checking account, my savings account. The other half he put in his name and his wife's name and I couldn't understand that." Deposition of Florence Goldman at J.A. 327. It appears that there was also a disagreement between Dennis Goldman and Bequai at about this time. Both men stated that they formerly were very close friends, and Bequai had employed Dennis Goldman for some time as an administrative member of his legal practice. However, in middle to late 1990, the two had an argument stemming at least in part from Bequai's handling of Florence Goldman's finances. As a result of this quarrel, Bequai dismissed Dennis Goldman from his employ.

### B. *Decisions Below*

Appellant filed her Complaint in the instant action on November 15, 1991, over five years after she conveyed an interest in her property to August Bequai. Goldman brought claims against Bequai for fraud and deceit, breach of fiduciary obligation, tortious conversion, and legal malpractice. In addi-

tion, appellant brought an action against Bequai's wife, Mary Ryan Bequai, for breach of fiduciary obligation. Ms. Bequai was an employee of Sovran Bank, the bank at which Goldman and August Bequai opened accounts with the proceeds of the sale of the Massachusetts Avenue property; however, the bank was not alleged to have been otherwise involved in the transactions that are the basis of this suit.[2]

Bequai and his wife filed a motion to dismiss Goldman's complaint on December 23, 1991. The District Court's Memorandum and Order of February 5, 1992 dismissed Goldman's suit against Mary Ryan Bequai for failure to state a claim, ruling that the record failed to indicate any basis for finding that a fiduciary relationship had existed between Ms. Goldman and Ms. Bequai. The Memorandum and Order denied August Bequai's motion to dismiss and, instead, construed the motion as one for summary judgment on the ground that Goldman's claims against August Bequai were barred by the applicable statute of limitations. The trial court ordered limited discovery on the question of the statute of limitations and, also, on the possibility that August Bequai had or might dissipate his assets such that he could not satisfy any judgment against him. *See* Feb. 5 Order, *reprinted in* J.A. 308.

Pursuant to the District Court's grant of limited discovery, Bequai deposed Goldman, her son, and her psychiatrist. Goldman took no depositions, contending that nothing she deemed relevant could be discovered under the terms of the court's order. On August 18, 1992, the District Court issued the Order appealed from in the instant case. This Order rejected appellant's motion to reconsider the dismissal of her claim against Mary Ryan Bequai. The trial court also ruled that, as to the claims against August Bequai, Goldman knew or should have known of her alleged injury within three years of the time her alleged injury occurred; accordingly, the court granted summary judgment for August

Bequai on the ground that, under District of Columbia law, the statute of limitations had run. *See* Aug. 18 Order, *reprinted in* J.A. 308.

In particular, the District Court found that Goldman had sustained an injury when Bequai obtained an ownership interest in her properties in January 1986, and that Goldman knew or should have known that her conveyances to Bequai were the source of her injury at the time she conveyed the interests to him, rather than in mid-1990 (after the sale of the Massachusetts Avenue property). On these points, the trial court also opined that Goldman had failed to show that she acted pursuant to mental incompetence, a lack of understanding of what she was doing, or compulsion.

## II. DISCUSSION

### A. Applicable Law and Standard of Review

All parties agree that the instant case is governed by District of Columbia law, and that, under the relevant statute, Goldman was required to bring suit within three years of the date when her cause of action accrued. *See* D.C.CODE ANN. § 12–301 (1981). There is also no dispute that August Bequai's allegedly tortious acts were committed more than three years before appellant filed her Complaint. Thus, the principal issue presented in this appeal is whether the District Court properly granted summary judgment for appellee on the ground that Goldman's claim was time-barred, in light of appellant's claims that the statute of limitations should have been equitably tolled.

■ District of Columbia law applies the "discovery rule" to determine when a tort action accrues, absent equitable tolling. "Under this rule, a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some

---

2. In her Complaint, Goldman alleged that she and August Bequai met with Mary Ryan Bequai shortly after the sale of the property, and that Ms. Bequai had advised them to see one of the bank's investment officers. Goldman's counsel subsequently learned, apparently during the course of Ms. Goldman's deposition, that appellant in fact never met with Mary Ryan Bequai. Goldman's counsel notified the District Court of this fact in appellant's memorandum opposing Bequai's motion to dismiss.

evidence of wrongdoing." *Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C.1989); *see also, e.g., Williams v. Mordkofsky,* 901 F.2d 158, 162 (D.C.Cir.1990).

This court reviews grants of summary judgment *de novo. See, e.g., Nikoi v. Attorney Gen. of United States,* 939 F.2d 1065, 1068 (D.C.Cir.1991). As is now well-settled, summary judgment may not be granted if there remain genuine issues of material fact. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Further, the evidence offered by the nonmoving party must be accepted as correct, and all justifiable inferences must be drawn in her favor. *Id.* at 255, 106 S.Ct. at 2513–14. In short, to avoid summary judgment, Goldman must show the existence of evidence sufficient to permit a reasonable jury to find that the statute of limitations should have been equitably tolled. *See generally id.* at 248–52, 106 S.Ct. at 2510–12.

B. *Goldman's Arguments for Equitable Tolling in Her Claims Against August Bequai*

As a general matter, "what a plaintiff knew and when [she] knew it, in the context of a statute of limitations defense, are questions of fact for the jury." *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1484 (D.C.Cir.1989). This court held in *Byers v. Burleson,* 713 F.2d 856, 861 (D.C.Cir.1983), that, under District of Columbia law, "[s]ummary judgment is not appropriate in a case applying the discovery rule if there is a genuine issue of material fact as to when, through the exercise of due diligence, the plaintiff knew or should have known of her injury."

In the instant case, it is plain that material questions of fact remain that are directly relevant to Goldman's contentions that the statute of limitations should be equitably tolled. While appellant's Complaint and the motions she filed below are not models of clarity, Goldman has advanced substantial

evidentiary claims in support of several different theories of her case; these claims would serve to toll the statute of limitations if proven at trial. The principal problem here is that the District Court erred in considering only whether a hypothetical "reasonable person" should have discovered her injury within the limitations period. This was error because each of Goldman's potential theories of equitable tolling turns on fact-specific questions as to whether a plaintiff *in her situation* reasonably should have discovered that she had been injured. Specifically, Goldman has offered evidence sufficient to raise material questions of fact as to whether the statute of limitations should be equitably tolled under the doctrines of equitable estoppel, misrepresentation, and undue influence.

The analysis that follows is not meant to be exhaustive or conclusive, but merely to suggest the legal grounds that are relevant in this case to determine whether the running of the limitations period should be tolled. We express no opinion as to the ultimate merits of these or any other claims on remand, but hold that it was error for the trial court to grant summary judgment in favor of August Bequai.

1. *Equitable Estoppel*

District of Columbia law provides that "[a] person who signs a contract after having had an opportunity to read and understand it is bound by its provisions." *Interdonato v. Interdonato,* 521 A.2d 1124, 1133 (D.C.1987). Nevertheless, a contract can, of course, be avoided if it was induced by fraud or misrepresentation. *Id.* In *Interdonato,* the District of Columbia Court of Appeals overturned a grant of summary judgment in favor of a defendant who fifteen years earlier had made allegedly false promises that he would provide for the plaintiff's financial needs, in order to induce her to drop a suit alleging that the defendant had acted improperly as the executor of a will. The court held in that case that material issues of fact remained as to whether the defendant had actually made such a promise, and whether plaintiff, in reliance on that promise, had been "lulled for fifteen years into not bring-

ing suit." *Id.* at 1135. The court explained that:

> a defendant is estopped from asserting the statute of limitations as a bar to plaintiff's action *if he has done anything that would tend to lull the plaintiff into inaction* and thereby permit the statutory limitation to run against him.

*Interdonato,* 521 A.2d at 1135 (emphasis added, brackets omitted) (quoting *Property 10–F, Inc. v. Pack & Process, Inc.,* 265 A.2d 290, 291 (D.C.1970)). The court went on to cite the Supreme Court's maxim that "no man may take advantage of his own wrong" and to note that this principle may be "employed to bar inequitable reliance on statutes of limitations." *Id.* (quoting *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 232, 233, 79 S.Ct. 760, 761, 762, 3 L.Ed.2d 770 (1959)); *accord Alley v. Dodge Hotel,* 551 F.2d 442, 446 (D.C.Cir.), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977); *Fontana v. Aetna Casualty & Surety Co.,* 363 F.2d 297, 299 (D.C.Cir.1966).

*Interdonato* held that two unresolved issues of fact precluded summary judgment in that case: whether the defendant made the alleged promises, and whether the plaintiffs were lulled by these promises into not bringing suit. 521 A.2d at 1135. In that case, as in the instant dispute, "[t]he presence of these issues ... precludes the granting of summary judgment based on the statute of limitations." *Id.* at 1135–36. This court relied on similar reasoning in *Kropinski v. World Plan Executive Council,* 853 F.2d 948, 955, 956 (D.C.Cir.1988), in which it was held that "it was for the jury to decide" when a plaintiff who alleged that he had been lulled into not bringing suit should have discovered the defendants' alleged fraud.

■ In the instant case, although Goldman did not use the words "equitable estoppel" in her papers below or in this court, she did allege that she relied on Bequai's representations that the property transfers at issue were merely temporary. *See, e.g.,* Memorandum in Opposition to Motion to Dismiss at J.A. 90–93. If appellant were to prove her allegations at trial, Bequai could not escape liability merely because he waited until the statute of limitations had run before arrang-

ing for the sale of appellant's property. Goldman's allegations are sufficient to raise a material question of fact as to whether Bequai is estopped from asserting the statute of limitations as a defense under the logic of the aforecited cases.

### 2. *Misrepresentation and the Discovery Rule*

■ Implicit in the District Court's resolution of this case is its assumption that Goldman's cause of action accrued when she signed the conveyances in 1986 because a "reasonable person" would have understood the meaning of those documents and Bequai's role in the transactions. This analysis, however, not only overlooks the existence of several unresolved issues of material fact, but effectively reads appellant's fraud claims out of her complaint. Goldman alleges that she did not discover her legal injury until 1990 *because* Bequai misrepresented the nature of her conveyances, and she relied on those misrepresentations. The District of Columbia's "discovery rule" provides that a cause of action accrues when a plaintiff knows, or with reasonable diligence should know of her injury, its cause, and some evidence of wrongdoing. However, in a case in which a plaintiff alleges that she was defrauded, the reasonableness of a plaintiff's lack of awareness of injury necessarily depends on whether reliance on the alleged fraud was "reasonable" in the context of the law of misrepresentation. For example, a "reasonable" investor does not invest in a "Ponzi" scheme; however, if the scheme pays acceptable dividends and otherwise appears bona fide, then a reasonable person might not discover her injury for some time. Moreover, if the investor is especially vulnerable to being defrauded, say, for example, because she is not mentally competent to make investment decisions, then the law takes this fact into account in judging the reasonableness of her actions. In sum, the law of misrepresentation provides that a factfinder must take into account a plaintiff's specific situation, and Goldman has offered evidence creating multiple issues of material fact as to whether it was reasonable for someone in her circumstances to have failed

to discover her alleged injury within the limitations period.

■ Under District of Columbia law, a plaintiff must show that she in fact *relied* upon an alleged misrepresentation. *See, e.g., King v. Industrial Bank of Washington,* 474 A.2d 151, 155–56 (D.C.1984). It is, however, apparently unsettled whether a plaintiff in a non-commercial transaction is required to show that her reliance was "reasonable," or merely that she "was genuinely deceived." *Id.* at 156 n. 4; *see also Hercules & Co. Ltd. v. Shama Restaurant Co.,* 613 A.2d 916, 933–34 n. 25 (D.C.1992) (reliance in arms-length commercial transactions must be reasonable, but this requirement may not exist in other contexts).

■ Even assuming that Goldman must show that her reliance on Bequai's alleged misrepresentations was reasonable, a question we do not decide, granting summary judgment in the instant case was plainly inappropriate. The RESTATEMENT (SECOND) OF TORTS and the RESTATEMENT (SECOND) OF CONTRACTS each provide that a plaintiff is justified in relying on a material misrepresentation if the defendant has taken steps to induce the plaintiff party to believe that she can trust the defendant's word. Both of these sources give the following example, which is strikingly similar to the facts of this case as appellant portrays them:

> A, professing friendship, offers to advise B, an elderly widow inexperienced in business, concerning her investments. He does so for five years, giving her good advice and acquiring her confidence. At the end of this time he advises her to buy from him worthless corporate stock, telling her that in his opinion it is a good investment. B buys the stock and suffers pecuniary loss. A is subject to liability to B.

RESTATEMENT (SECOND) OF CONTRACTS § 169 cmt. c, illus. 1; RESTATEMENT (SECOND) OF TORTS § 542 (1977) cmt. h, illus. 1. Tort and contract law recognize a need to protect persons who are victimized by those who abuse such "confidential relationships." Whether two parties are in a confidential relation is a fact-specific inquiry, but in general "a confidential relationship arises when one party, having gained the trust and confidence of another, exercises extraordinary influence over the other party." STUART M. SPEISER ET AL., 9 THE AMERICAN LAW OF TORTS § 32.81 at 396 (1992). Mental capacity, age, education, business knowledge, and the extent to which the alleged victim entrusted her affairs to the other party are among the relevant factors in establishing the existence of such a relation. *Id.* at 398. In the instant case, Goldman has plainly offered testimony that raises material factual questions as to whether she and Bequai were in a confidential relationship.

Finally, Prosser and Keeton note in their discussion of misrepresentation that:

> the person deceived· is not ˙held to the standard of precaution, or of minimum knowledge, or of intelligent judgment, of the hypothetical reasonable man ... [P]eople who are exceptionally gullible, superstitious, ignorant, stupid, dim-witted, or illiterate, have been allowed to recover when the defendant knew it,· and deliberately took advantage of it; The design of the law is to protect the weak and credulous from the wiles and stratagems of the artful and cunning as well as those whose vigilance and security enable them to protect · themselves.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 108 at 751 (5th ed. 1984) (footnotes and internal quotation omitted). Goldman has alleged facts that suggest not only that she was especially vulnerable to fraud, but also that she was accustomed to relying on Bequai's advice and that he encouraged her to do so. Goldman also contends that Bequai was acting as her attorney during the relevant period, a fact which, if proven, would further justify her reliance. The District Court erred in ignoring these fact-bound issues in reaching its conclusion that Goldman's suit was time-barred under the discovery rule.

### 3. *Undue Influence*

■ Goldman argued directly and unequivocally in the District Court that Bequai obtained a joint tenancy in her real estate holdings through the exercise of undue influence over her. *See, e.g.,* Memorandum in Opposition to Motion to Dismiss at J.A. 84–88. "Undue influence" is a contract doctrine

which serves to equitably toll the statute of limitations. Appellant has presented evidence sufficient to raise a material question of fact as to this theory.

■ Undue influence is sometimes treated as a species of duress, as both doctrines address situations in which the will of one party to a contract is overcome by the improper acts of another party. Situations amounting to undue influence vary widely and are fact-specific, but in general undue influence may be found when "a party in whom another reposes confidence misuses that confidence to gain his own advantage while the other has been made to feel that the party in question will not act against his welfare." SAMUEL WILLISTON, 13 WILLISTON ON CONTRACTS § 1625 at 776–77 (Walter H.E. Jaeger ed., 3rd ed. 1970).

■ Whether a plaintiff is subject to undue influence is a question of fact, *see* RESTATEMENT (SECOND) OF CONTRACTS § 177 cmt. a, and Williston notes that "[e]very case is different from every other case, and must depend largely on its own circumstances." 13 WILLISTON § 1625 at 781. This court expressed similar sentiments in *Simmons v. Pinney,* 375 F.2d 929, 930 (D.C.Cir.1967), in which it surveyed District of Columbia case law and found an "infinite variety" of factual situations that had been found to constitute undue influence.

Both Williston and the RESTATEMENT (SECOND) OF CONTRACTS agree that the alleged victim's advanced age, mental condition and poor health, as well as the consideration a defendant gave for the benefit conferred by a plaintiff, are factors to be considered in establishing undue influence. Although the District Court made much of the fact that Goldman's psychiatrist stated that she was not mentally *incompetent,* this fact is hardly dispositive of the undue influence issue. Indeed, Williston specifically states that "[u]ndue influence in its essential elements has no real relation to mental incapacity." 13 WILLISTON § 625 at 782.

■ Although there appears to be no case in the District of Columbia that addresses the issue, it is a matter of basic contract law that if a plaintiff proves undue influence,

the statute of limitations is equitably tolled so long as the influence continues. Contracts voidable for undue influence can be subsequently ratified; "[n]o acts can constitute ratification, however, which are or were done while the fear or undue influence which operated to induce the original transaction is still effective." 13 WILLISTON § 1627 at 812–13, 814 n. 15; RESTATEMENT (SECOND) OF CONTRACTS § 380(1). "As to when the statute of limitations bars a cause of action or defense based on duress, business compulsion, or undue influence, the rule generally applied is that *the statute is tolled until the duress or coercion is no longer effective.*" 13 WILLISTON § 1627B at 825 (emphasis added). Further, whether the alleged victim continued to be subject to undue influence is a factual question which "must be determined from all the surrounding facts and circumstances." *Id.* at 826.

Goldman has alleged facts which a reasonable jury could find to constitute undue influence. She has suggested that her age, her lack of business experience, her long friendship with and reliance on Bequai, and her mental condition all made her susceptible to Bequai's manipulation. In addition, Goldman argues that Bequai was acting as her attorney, and that he accordingly had both additional influence over her, and additional obligations to see to her welfare. Appellant also points to the paltry consideration she received for the enormous benefit she conferred on appellee. These factors, if proven at trial, have the makings of a classic case of undue influence.

### 4. *Effect of Power of Attorney*

■ Bequai suggests that because Dennis Goldman had a limited power of attorney to act for Florence Goldman in connection with the sale of the Massachusetts Avenue property, summary judgment was proper in this case because Dennis Goldman should have known of the injury to Florence Goldman's interests within the limitations period. However, appellant stated that Dennis Goldman received the power of attorney at Bequai's express direction. In addition, Dennis Goldman stated that Bequai handled all aspects of the negotiations for the sale of the

Massachusetts Avenue property. There is thus reason to question whether this "power of attorney" was merely a means by which Bequai sought to further his own interests, rather than a device for Florence Goldman's protection. Further, Dennis Goldman stated that he, like his mother, relied on Bequai's assurances that the property transfers which are the subject of this litigation were merely temporary, and were necessary in order for Bequai to set up a business for himself and the Goldmans. *See, e.g.*, Affidavit of Dennis Goldman, *reprinted in* J.A. 111–12. Dennis Goldman, unlike appellee, is a non-lawyer. It is not possible to decide as a matter of law, on the basis of the record before us, that he discovered the alleged fraud within the limitations period. Further, a reasonable jury could certainly find that the power of attorney was a sham engineered to promote appellee's interest rather than appellant's, or that Bequai is prevented under equitable estoppel or some other theory from asserting the statute of limitations as a defense to Dennis Goldman's discovery of his mother's injury.

C. *Goldman's Claims Against Mary Ryan Bequai*

 Goldman's claim against Mary Ryan Bequai for violation of fiduciary duty is predicated on two theories, neither of which finds any support in existing law. First, Goldman elliptically suggests that by virtue of being August Bequai's spouse, Ms. Bequai must have known of his alleged fraud and helped to perpetrate it. However, even assuming, *arguendo*, that Goldman had a fiduciary or confidential relationship with August Bequai, there is absolutely no basis in the record for holding that she also has such a relationship with his wife; and nothing in existing law would impute liability to Ms. Bequai in this case solely on the basis of her status as August Bequai's spouse.

Appellant also contends that she has a cause of action against Mary Ryan Bequai because she allegedly recommended, through her husband, that Goldman invest her share of the proceeds of the sale of the Massachusetts Avenue property in an account at Sovran Bank, Ms. Bequai's employer. Goldman advances no evidence to support her allegation that Ms. Bequai had any involvement whatever in her husband's choice of banks. Further, there is no basis in law to hold that a depositor establishes a fiduciary relationship with every bank employee, including those employees with whom the depositor has had no contact at all. Finally, not only is there no fiduciary relationship between Mary Ryan Bequai and Goldman, appellant was in no way injured by opening an account at Sovran Bank. Goldman complains that August Bequai put his name on her account, but Mary Bequai had no part in this act. Accordingly, the District Court properly dismissed appellant's claims against Mary Ryan Bequai for failure to state a claim.

Appellant's motivation in naming Mary Ryan Bequai as a defendant in this suit seems to be that she fears that appellee will dissipate his assets by giving them to his wife. Such fears are not an adequate basis for a lawsuit; and, in any event, these fears are groundless as Mary Ryan Bequai would have defeasible title as to Goldman if it is determined at trial that August Bequai acquired appellant's property by fraud.

III. CONCLUSION

For the reasons given above, the District Court's dismissal of appellant's claim against Mary Ryan Bequai is affirmed. The District Court's grant of summary judgment in favor of August Bequai is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*