50 F.3d 1096
 311 U.S.App.D.C. 144
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
PRIMEDICAL INC., et al., Plaintiffs-Appellants,
v.
ALLIED INVESTMENT CORPORATION, et al., Defendants-Appellees.
 Nos. 94-7078, 94-7151.
 United States Court of Appeals, District of Columbia Circuit.
 March 13, 1995.
Rehearing Denied April 7, 1995.
 
 Before: WALD, RANDOLPH, and ROGERS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal from judgments of the United States District Court for the District of Columbia, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir. 36(b). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in No. 94-7078 and No. 94-7151, the judgment of the United States District Court for the District of Columbia is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely filed petition for rehearing. See D.C.Cir.Rule 41(a).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Appellants are Primedical Incorporated, an owner and operator of health care facilities, and a number of corporate and individual investors who allege interests in PMI (collectively "PMI"). This suit arises from an agreement between PMI's principals and Allied Investment Corporation ("Allied") to create a third company, Primedical Corporation ("PC"), to purchase a number of health care clinics. PMI believes that it was entitled to an ownership share of PC that, in the end, went to Allied. PMI appeals the district court's entry of summary judgment in favor of Allied on PMI's breach of fiduciary duty, tortious interference with business relationship, breach of contract, and conversion claims. We have elected to dispose of this appeal by unpublished order because what appears on the record to be the most substantial argument in the appellants' favor was not properly raised below. We therefore affirm for substantially the reasons articulated by the district court.[1]
 
 
 5
 Appellants' principal argument on appeal challenges the district court's ruling that their breach of fiduciary duty and tortious interference with business relationship claims were barred by the applicable three-year limitations period contained in D.C. CODE ANN. Sec. 12-301(8). The court, applying the traditional "date-of-the-injury" rule, reasoned that these claims accrued when the capital structure of PC was established and PMI did not receive the interest that it expected, which occurred more than three years before PMI initiated this suit. Primedical at 4-6. PMI contends that this was error because the District of Columbia employs the "discovery rule" to determine when some tort causes of action--those where the fact of injury may not be readily discernible at the time actually incurred--accrue. See, e.g., Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192, 1201 (D.C.1984). Appellants claim they did not "discover" that they had been "frozen out" of PC until long after the new company's capital structure had been established.
 
 
 6
 This argument is inherently paradoxical, because PMI's principals, Stanford Ellsworth and Randolph Old, were involved in the formation of PC and in fact received ten percent of the new company for themselves. One would therefore expect that PMI "discovered" the alleged injury at the time PC's capital structure was set. Appellants attempt to redeem the claim, however, by arguing for the first time on appeal that Old and Ellsworth conspired with Allied to conceal PC's capital structure from the rest of PMI for over a year; they protest that innocent PMI investors should not be punished for the misdeeds of their "insider" principals.
 
 
 7
 We think it unnecessary to reach the question whether appellants' creative "conspiracy" theory, if properly presented to the district court, would have permitted them to successfully oppose summary judgment on their fiduciary duty and tortious interference with business relationship claims. The fact is that this theory was not argued below. We find no trace of it in PMI's Complaint. Nor did appellants raise the theory in their response to Allied's motion for summary judgment. Instead, PMI relied heavily on the deposition testimony of Old and Ellsworth throughout the proceedings below, without ever intimating that they were hostile parties. Under these circumstances, the district court understandably did not consider that appellants' alleged injury might have been "discovered" long after it was incurred, and we will not do so for the first time on appeal. Cf. Marymount Hospital v. Shalala, 19 F.3d 658, 663 (D.C.Cir.1994) (holding that arguments not raised below are presumed waived).
 
 
 8
 PMI also argues, citing Goldman v. Bequai, 19 F.3d 666 (D.C.Cir.1994), that the question when their claims accrued was for the jury, not the district court. This argument misunderstands Goldman. It is true in many cases that "what a plaintiff knew and when she knew it, in the context of a statute of limitations defense, are questions for the jury." Id. at 672 (internal quotations and citation omitted). In particular, "summary judgment is not appropriate [in a "discovery rule" case] ... if there is a genuine issue of material fact as to when, through the exercise of due diligence, the plaintiff knew or should have known of her injury." Id. (internal quotations and citation omitted). But, as we have noted, PMI did not present its "conspiracy" theory to the district court, and so there was no "genuine issue of material fact" as to whether PMI knew they had been shut out of PC at the time their principals entered the agreement establishing the capital structure of the new company. Goldman is therefore inapposite.
 
 
 9
 A final point that bears explication concerns the district court's reasoning in granting summary judgment on PMI's conversion claim. The district court relied on the common law rule that intangible property interests are not subject to conversion. See, e.g., The Equity Group, Ltd. v. Painewebber Inc., 839 F.Supp. 930, 933 (D.D.C.1993). The status and contours of that rule are uncertain in this circuit, and we think it unnecessary to reach the question in order to affirm the disposition below.
 
 
 10
 At oral argument, appellants clarified that they have not alleged conversion of "intangibles" in the traditional sense. Rather, the primary "conversion" claimed is that of PMI's alleged interest in PC, as represented by common shares of PC eventually issued to Allied. As the district court observed, however, PMI never acquired this purported ownership interest in PC. Because a conversion claim clearly may not be asserted as to property one does not own, see, e.g., Duggan v. Keto, 554 A.2d 1126, 1137 (D.C.1989), this claim was properly dismissed as a matter of law.
 
 
 11
 As the district court noted, PMI has also argued that a "wrongful commingling of PMI and PC" amounted to conversion of PMI's assets by Allied. The court, however, found that there was no conflict in the evidence that "PC and PMI maintained separate bank accounts and that their funds were not commingled." Primedical at 15. The court further noted that "plaintiffs [have not] pointed to any evidence in the record that PC ever used a single ... chattel belonging to [PMI]." Id. Therefore, the court properly found that appellants had not carried their burden on this claim to designate "specific facts showing that there is a genuine issue for trial." Id., citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 
 
 [1]
 The rulings on review are all captioned Primedical, Inc. v. Allied Investment Corp., Civ. No. 90-1802. They were issued on March 11, 1993, March 31, 1994, and July 15, 1994. All references to "Primedical " in this Memorandum are to the March 31, 1994 Memorandum Opinion