Joseph DUREIKO, as Trustee, and Southern Pine Isle Corporation, a Florida corporation, Plaintiffs,

v.

UNITED STATES, Defendant.

No. 97–44C.

United States Court of Federal Claims.

Dec. 9, 1998.

James W. McDonald, McDonald & Associates, Attorneys at Law, Homestead, Florida, attorney of record for the plaintiffs.

Geoffrey C. Cook, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., with whom were Kirk Manhardt, Assistant Director, David M. Cohen, Director, and Frank W. Hunger, Assistant Attorney General, attorneys of record for the defendant.

### OPINION

HORN, Judge.

The above-captioned case comes before the court on the defendant's motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC). The plaintiffs filed a complaint against the United States which seeks damages in excess of $2,000,000.00 for compensatory and consequential damages, including loss of revenue, and punitive damages. Plaintiffs claim that in the aftermath of Hurricane Andrew the Federal Emergency Management Agency (FEMA) and the United States Army Corps of Engineers (the "Corps") caused damage to the plaintiffs' property by improperly supervising the debris removal process and subsequent remedial work at the Pine Isle Mobile Home Park owned by the plaintiffs. Plaintiffs present four counts to the court in their complaint: (1) "breach of contract" premised upon an alleged agreement between FEMA and the plaintiffs regarding the manner and means of debris removal; (2) a "governmental taking of private property for public use" in violation of the Fifth Amendment to the United States Constitution in that the debris removal denied the plaintiffs "economically viable use of its property;" (3) "inverse condemnation" of plaintiffs' property also in violation of the Fifth Amendment to the United States Constitution "[t]hrough ... regulatory conduct and by permitting and participating in

the wholesale destruction" of plaintiffs' property; and (4) "fraud in the inducement" in that plaintiffs allege FEMA and the Corps induced the plaintiffs to enter into a lease agreement when the government "had no intention of fulfilling their promise of allowing only rubber-tired equipment into the park."

## FACTS

The plaintiffs are composed of: (1) Joseph Dureiko as Trustee of the Joseph E. Dureiko Restated and Amended Revocable Trust Agreement and as Trustee of the Arlene M. Dureiko (Deceased) Restated and Amended Revocable Trust Agreement, together the owner of the property at issue; and (2) Southern Pine Isle Corporation, a Florida Corporation with its principal place of business in Dade County, Florida (Southern Pine Isle Corp.). Southern Pine Isle Corp. leases the property at issue from the two trusts and, in turn, owns and operates a mobile home park, Pine Isle Mobile Home Park (Pine Isle), on the premises located in Dade County at 28600 S.W. 132nd Avenue in Homestead, Florida.

On August 24, 1992, Hurricane Andrew caused severe and extensive damage to the mobile homes and property located at Pine Isle and shortly thereafter the region was declared a disaster area by the United States federal government. Pine Isle was declared uninhabitable by Metropolitan Dade County, and the mobile homes that were damaged or destroyed were ordered to be removed. It is uncontested, that FEMA and the Corps were authorized to participate in recovery, reconstruction and assistance activities for the area impacted by Hurricane Andrew. Shortly after the hurricane in the month of August, FEMA representatives entered Pine Isle seeking to lease mobile home sites or lots, for FEMA trailers to be temporarily occupied by persons displaced by the hurricane. These proposed leases were to commence subsequent to the time that Pine Isle would complete its own cleanup of the property. The plaintiffs allege that the government, acting through FEMA, then offered to cleanup Pine Isle at the government's expense in exchange for the right to lease mobile home sites.

The plaintiffs allege that prior to entering into an agreement with FEMA, park management "expressed concerns with and inquired as to the manner and method of debris removal" and that they "expressly stated" requirements for debris removal including (i) the use of rubber-tired equipment and not caterpillar track equipment, (ii) preservation of the park infrastructure, including utilities, pads and driveways, (iii) the hand-picking and hand-raking of debris near utilities, pads and driveways, (iv) the repair or installation of the utilities pursuant to the Dade County Code, and (v) restoration of the property to the extent "that everything would be 'back up and running' and in the same or better condition than it was before the hurricane." Moreover, the plaintiffs allege that in a meeting with Pine Isle management, the Corps "confirmed and ratified all of the conditions of the agreement" listed above along with a stated intent to oversee the cleanup efforts to be conducted by a government contractor. It appears that these conditions may have been incorporated into the Task Order, and conveyed through the government agencies involved to the contractor hired by the government to undertake debris removal, Phillips & Jordan, Inc. (Phillips & Jordan).

The complaint also alleges that Pine Isle executed an agreement with the government that granted FEMA the right to lease sites or lots in exchange for the cleanup of the mobile home park at the government's expense.[1] The plaintiffs' complaint further alleges that a "simple memorandum" was executed between FEMA and Pine Isle that documented the promise by Pine Isle to lease over 100 of the mobile home lots to FEMA.[2]

---

1. This alleged agreement was not attached to the complaint. The plaintiffs state that the agreement "was apparently lost in the extreme confusion in the after math [sic] of Hurricane Andrew ... and will be filed with this Court on receipt by Plaintiff from the Government" pursuant to a Freedom of Information Act request. To date no such document has been presented to the court.

2. This "simple memorandum" that was allegedly executed by the parties likewise was not attached to the complaint. Filed as part of the record,

In addition, an undated "Release for Demolition of Mobile Home Park and Removal of Debris" was signed and executed by a representative of FEMA and Joseph Dureiko, on behalf of Pine Isle. This release states in pertinent part:

> The undersigned hereby certifies and warrants that he is the owner or authorized agent of the owner [of] the following described mobile home park:
>
> Pine Isle MHP
>
> 28600 SW 132 Ave
>
> Homestead, FL 33023
>
> which has been declared uninhabitable under Chapter 17C of the Code of Metropolitan Dade County, Florida.
>
> In consideration for Dade County or the federal government's undertaking the demolition of mobile homes and removal of the debris from the above mobile home park, the undersigned hereby releases Dade County, State of Florida, and the United States Government, and their respective officers, employees and contractors from all claims of whatever nature arising from such demolition and removal.

On or about September 3, 1992, the Corps entered into a contract, DALW 17–92–C–9518, with Phillips & Jordan to perform debris removal in Dade County, Florida. Task Order No. 4, specifically outlining the debris removal terms that Pine Isle sought, was provided to the contractor by the government on or about September 17, 1992. During the cleanup process that followed, the Corps provided supervision over the debris removal contractor, Phillips & Jordan, through a Corps' contracting officer's representative. However, plaintiffs state in their complaint that:

> In fact, in derogation of the express terms of the contract, (Task # 4) Phillips & Jor-

dan's employees indiscriminately crushed, tore out, obliterated, destroyed, and removed nearly everything above- and below-ground at Pine Isle, including but not limited to above- and below-ground utilities, concrete mobile home pads, concrete patios, asphalt paving, structures, vegetation and top soil all of which had survived Hurricane Andrew.

Plaintiffs allege that "the Corps and FEMA personnel either failed to observe, or observed and failed to halt, in contravention of the express terms of the contract, the destruction of improvements and property at Pine Isle ... which were not debris." In addition, according to the plaintiffs during the debris removal process the Corps and FEMA were put on notice of the ongoing damage to the property. The plaintiffs also allege that the utilities installed and the repairs undertaken at Pine Isle did not conform or comply with local codes or with the terms of the agreement between the parties.

Plaintiffs further assert that "despite assurances, no effort was made on the part of FEMA, the C[orps] or Phillips & Jordan to repair the damages or compensate Pine Isle."[3] Moreover, plaintiffs allege that "[d]ue to the extensive destruction of Plaintiff[s'] improvements located on the property, coupled with negligent and/or substandard repair work, in contravention of the governing contracts Plaintiff[s] ha[ve] not been able to market or lease its property for its full economic value and to resume the mobile home park business which it had built up over prior years. Plaintiff[s] ha[ve] lost substantial revenues on account thereof." According to the plaintiffs, they "gave notice [by letter] of its claim for damages (then alleged as tort damages)" to FEMA and the Corps on July 19, 1995.[4] The government

---

however, there appear to be 102 individual leases for mobile home lots signed by the parties on or after September 21, 1992. There is no dispute regarding the fact that FEMA leased over 100 lots at Pine Isle.

3. It came to the attention of the court during oral argument and was stipulated to by the parties that, on or about July 9, 1997, the plaintiffs recovered a sum certain from Phillips & Jordan pursuant to a settlement agreement arising out of litigation in the United States District Court for

the Southern District of Florida that stemmed from the same facts as are at issue in the instant action.

4. The complaint alleges the date of this denial by the Corps and indicates that a copy of the denial letter dated July 19, 1995 is attached. However, the plaintiffs in filing their complaint with this court failed to attach any of the three exhibits that were stated to be attached to the complaint, and even after inquiry by the court failed to provide the documents.

denied the claims. In the instant action, the plaintiffs allege claims, which sound in contract and for a taking, for damages in the amount of approximately $2,000,000.00, exclusive of interest, cost and expenses, and seek attorney's fees and costs for the takings and inverse condemnation counts.

## DISCUSSION

The defendant's motion to dismiss argues that the plaintiffs' claims should be dismissed pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5121–5204c (1994). The applicable subchapter is titled "Major Disaster and Emergency Assistance Administration" and states that "[t]he Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty ..." in providing disaster relief. 42 U.S.C. § 5148. The defendant also argues that if the takings and inverse condemnation claims are not premised upon authorized acts of the United States, then they are not legitimate acts of the government and cannot constitute a violation of the Takings Clause of the Fifth Amendment of the United States Constitution. The defendant also contends that the plaintiffs' claim of "fraud in the inducement" sounds in tort, which is not a viable action in this court. In addition, the defendant raises a collateral estoppel argument to suggest that the issues in the instant litigation were adjudicated previously in a United States District Court case in the Southern District of Florida, specifically *Dureiko v. Phillips & Jordon, Inc.*, No. 95–1441–CIV–MOORE, 1996 WL 825402 (S.D.Fla. Apr. 29, 1996).

Plaintiffs respond that the government's acts of poor contractor supervision occurred after the government entered into a contract with the plaintiffs, therefore, the subsequent acts during the cleanup were not within the scope of the immunity provided by the Stafford Act. Moreover, the plaintiffs suggest that a right exists for recovery under a third-party beneficiary doctrine as a result of the contract with Phillips & Jordan for the cleanup operations that allows the plaintiffs' breach of contract claim to survive. Plaintiffs also argue that the takings and inverse condemnation claims survive as constitutional claims, independent of other claims, and that the government's failure to honor its contracts with the plaintiffs deprived plaintiffs of its property in violation of the United States Constitution. The plaintiffs rebut the collateral estoppel argument by suggesting that the issues litigated in the United States District Court for the Southern District of Florida were distinct and different from the issues being litigated before this court.

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), as in the instant case, has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Alaska v. United States*, 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178,

189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiffs complaint, the Tucker Act, 28 U.S.C. § 1491 (1994), as amended 28 U.S.C.A. § 1491 (Supp.1998), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *United States v.*

*Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (citations omitted); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S. S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

According to RCFC 12(b)(4), "[a] motion to dismiss for failure to state a claim upon which relief can be granted is appropriate where the plaintiff cannot assert a set of facts which would support its claim." *Mitchell Arms, Inc. v. United States,* 7 F.3d 212, 215 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1106, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994) (citing *Chang v. United States,* 859 F.2d 893, 894 (Fed.Cir.1988)). In determining a motion to dismiss under RCFC 12(b)(4), the court "must 'assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant.'" *Id.* (citing *Gould v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)). RCFC 12(b)(4) "mirrors" Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6); *Maniere v. United States,* 31 Fed.Cl. 410, 419 (1994). The court is required to deny a motion pursuant to RCFC 12(b)(4) or Rule 12(b)(6), "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99 (footnote omitted); *see also Maniere v. United States,* 31 Fed.Cl. at 419 (citing *Advanced Cardiovascular Sys., Inc. v.*

*SciMed Life Sys., Inc.,* 988 F.2d 1157, 1160 (Fed.Cir.1993)).

■■■ Although, generally, a person aggrieved due to the actions of an administrative agency is entitled to judicial review, Congress may specifically limit that right. *See Ornellas v. United States,* 2 Cl.Ct. 378, 379 (1983). The liability of the United States under section 5148 of the Stafford Act, also known as the Disaster Relief Act, is limited by a "discretionary function" exception, as follows:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148.

While the language is plain on its face,[5] the legislative history leaves no doubt regarding the public policy purpose behind the discretionary function exception in the Stafford Act:

> We have further provided that if the agencies of the Government make a mistake in the administration of the Disaster Relief Act that the Government may not be sued. Strange as it may seem, there are many suits pending in the Court of Claims today against the Government because of alleged mistakes made in the administration of other relief acts, suits aggregating millions of dollars because citizens have averred that the agencies and employees of Government made mistakes. We have put a stipulation in here that there shall be no liability on the part of the Government.

H.R. 8396, 81st Cong., 2d Sess., 96 Cong. Rec. 11895, 11912 (1950). *See also Rosas v. Brock,* 826 F.2d 1004, 1008 n. 1 (11th Cir. 1987); *Ornellas v. United States,* 2 Cl.Ct. at 379. When faced with the necessity to perform disaster relief, Congress has provided in 42 U.S.C. § 5121(a) for "special measures designed to assist the efforts of the affected states" for the following reasons:

> because disasters often cause loss of life, human suffering, loss of income, and property loss and damage; and ... because disasters often disrupt the normal functioning of governments and communities, and adversely affect individuals and families with great severity; ...

*Id.*

The United States Supreme Court in *United States v. Gaubert,* addressed an analogous and similarly stated discretionary function exception under the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1994) (FTCA):[6]

> The exception covers only acts that are discretionary in nature, acts that "involv[e] an element of judgment or choice," *Berkovitz, supra,* at 536, 108 S.Ct. 1954; see also *Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); and "it is the nature of the conduct, rather than the status of the actor" that governs whether the exception applies. *Varig Airlines, supra,* at 813, 104 S.Ct. 2755. The requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to

---

**5.** "The starting point in every case including construction of a statute is, or ought to be, the language itself." *Dillon, Read & Co., Inc. v. United States,* 875 F.2d 293 (Fed.Cir.1989) (citing *Commissioner v. Engle,* 464 U.S. 206, 214, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984); *Neptune Mutual Assoc., Ltd. of Bermuda v. United States,* 862 F.2d 1546, 1549 (Fed.Cir.1988)). If a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Dep't of Commerce,* 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)).

**6.** The language of the discretionary function exception under the Federal Tort Claims Act, 28 U.S.C. § 2680(a), states that the United States is not liable for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

adhere to the directive." *Berkovitz,* 486 U.S., at 536, 108 S.Ct. 1954.

Furthermore, even "assuming the challenged conduct involves an element of judgment," it remains to be decided "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Ibid.* See *Varig Airlines,* 467 U.S., at 813, 104 S.Ct. 2755. Because the purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," *id.,* at 814, 104 S.Ct. 2755, when properly construed, the exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz, supra,* at 537, 108 S.Ct. 1954.

499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (alteration in original).

In the United States District Court action in the Southern District of Florida, *Dureiko v. Phillips & Jordon, Inc.,* No. 95–1441–CIV–MOORE, 1996 WL 825402 (S.D.Fla. Apr. 29, 1996), premised upon the same facts as are at issue in the instant action, the court delineated the application of the discretionary function exception. The court pointed out that the conduct of the defendant falls within the discretionary function of the FTCA and the Stafford Act and that the applicable section of the Stafford Act "is virtually identical to section 2680 of the FTCA." *Id.* at *1. Judge Moore of the district court wrote:

> *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) sets forth a two prong test for analyzing the application of the discretionary function exception. The first prong is satisfied when a choice or judgment is involved in the performance of the function, and that choice or judgment is not tempered by a statute, regulation or policy which mandates a particular course of action. *Id.* at 536, 108 S.Ct. 1954. If this condition is met, a court then proceeds to the second prong, which provides that the discretionary function exception will apply if the activity in question is grounded in social, economic or political activity. *Id.* at 537,

> 108 S.Ct. 1954; *See also, Powers v. United States,* 996 F.2d 1121 (11th Cir.1993).

*Id.* at *1. The judge further stated:

> Following the test set forth in *Berkovitz,* this Court first finds that the conduct of Defendant United States falls clearly within the discretionary function exception of the FTCA and the Stafford Act. 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531. Where, as here, no statute or regulation controls the government's monitoring of a contractor's work, the extent of monitoring required or actually accomplished is necessarily a question of judgment or discretion, for the government. *Kirchmann v. United States,* 8 F.3d 1273 (8th Cir.1993) (If arguably based on policy considerations, both negligence in supervising a contractor and failure to supervise a contractor at all are included in the decisions protected by the discretionary function exception). Secondly, it is unquestionable that disaster relief provided under the Stafford Act is grounded in social, economic and political policy. *Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954.... In its supervision of Phillips' cleanup operations at Plaintiffs' mobile home park, the government was engaged in the permissible exercise of policy judgment. *Berkovitz,* 486 U.S. at 538, 108 S.Ct. 1954.

*Id.* at *2. The district court dismissed the plaintiffs' claims against the government. *Id.* (citing *Sunrise Village Mobile Home Park v. Phillips & Jordan,* 960 F.Supp. 283, 286–87 (S.D.Fla.1996)).

In the *Sunrise Village Mobile Home Park v. Phillips & Jordan* case, also filed in the United States District Court for the Southern District of Florida, and premised upon a complaint factually similar to the instant action involving the same contractor, Phillips & Jordan, a different district court judge discussed the applicability of the discretionary function exception when assessing a motion to dismiss brought by the United States:

> The authority clearly leaves room for agency judgment on which property should be cleared, whether to include private property in the cleanup, and whether to use federal instrumentalities or to make grants to states, local governments or to

private nonprofit facilities to effectuate the cleanup. *Se[e] id.* In the absence of a *"fixed or readily ascertainable standard"* for guiding government conduct, government decisions are discretionary. *Powers,* 996 F.2d at 1124 (citation omitted) (emphasis in original); *See Gaubert,* 499 U.S. at 322–24, 111 S.Ct. at 1273–74. Thus, under the Stafford Act, the Government's decisions regarding debris removal satisfy the first prong of the discretionary function test. Prior cases in this district have so held on similar facts. See *Robert K[.] Ames Farms v. United States,* 94–1448–Civ–Moreno, 1995 WL 914615 (S.D.Fla. Mar. 3, 1995) (dismissing suit for damages to property as a result of debris placement and removal after Hurricane Andrew); *B & D Farms Inc. v. United States,* 94–1449–Civ–Marcus (S.D.Fla. Dec. 21, 1994) (dismissing suit for damages to property as a result of debris removal after Hurricane Andrew).

960 F.Supp. at 286. The district court in *Sunrise Village Mobile Home Park v. Phillips & Jordan* discussed the discretionary function liability immunity granted to the United States in the context of federal disaster emergency efforts:

the Government's decisions on when, where, and how to remove debris after a major disaster are exactly the sort of policy-imbued decisions that fall within the second prong of the discretionary function exception. *See Robert K. Ames [v. United States,* 94–1448–Civ–Moreno, 1995 WL 914615 (S.D.Fla. Mar. 3, 1995)]; *B & D Farms [v. United States,* 94–1449–Civ–Marcus (S.D.Fla. Dec. 21, 1994)]. "Implicit in this statute are the policies of protecting public safety and health and restoring order following a national disaster." *B & D Farms, supra,* slip op. at 10. No facts beyond the bare allegations of the complaint are required in this case to establish that the actions challenged context of debris removal implicate[s] the second prong of the discretionary exception test. Thus, they fall squarely within the discretionary function exception to the FTCA and are shielded from second-guessing in court.

*Id.* at 286–87.

The decisions of the Florida district court in *Dureiko v. Phillips & Jordan, Inc.* and

*Sunrise Village Mobile Home Park v. Phillips & Jordan,* coupled with the precedent cited in those cases, are synonymous with the language of the discretionary function exception contained in the Stafford Act and its legislative history. The United States Claims Court, in *Ornellas v. United States,* likewise had the opportunity to examine the liability exception language that is contained in the Stafford Act:

The legislative history of the nonliability provision reinforces the intent to bar governmental liability and thus preclude judicial review. . . . Thus, Congress clearly manifested its intent to raise a statutory barrier to judicial review and specifically included this Court in that expression of intent.

*Ornellas v. United States,* 2 Cl.Ct. at 379–80 (quoting H.R. 8396, 81st Cong., 2d Sess., 96 Cong. Rec. 11895, 11912 (1950) and citing Disaster Relief Act of 1974, Pub.L. No. 93–288, 1974 U.S.C.C.A.N. 2 at 3081). In addition, the court in *Ornellas v. United States* was unequivocal in stating that "[t]his provision, on its face, clearly precludes federal governmental liability for its action or inaction in providing disaster relief." *Id.* at 379 (footnote omitted). Moreover, it is important to note that the language of the discretionary function non-liability provision remains unrevised since its first inclusion in the original Stafford Act of 1950.

Plaintiffs, however, attempt to argue that the government's blanket immunity from suit under the Stafford Act ceases when the government executed a contract with the plaintiffs and that all acts arising from that contract, subsequent to signing the contract, should be considered outside the auspices of the Stafford Act. It is the opinion of this court, however, that such an analysis is contrary to the explicit language in the Stafford Act and the evident intent of Congress to curtail litigation against the United States arising from the disaster relief efforts of FEMA and other agencies, such as the Corps, working in concert with FEMA. The acts for which the plaintiffs seek redress took place in a short time frame after the hurri-

cane and within the scope of federal disaster relief efforts authorized by the President pursuant to the Stafford Act. Simply stated, plaintiffs' claims fail in the wake of the Stafford Act's discretionary function non-liability provision.

■ Moreover, in the above-captioned case, even if the Stafford Act discretionary function exception was found not to be applicable, the parties stipulated that a general release was executed by Joseph Dureiko on behalf of the plaintiffs and by the United States, and a copy of that release is contained in the record. Although the release, if valid, would render this action moot, plaintiffs contend that the pre-incident release is not applicable. Plaintiffs rely on, and supplied to the court, the slip opinion issued by the United States District Court for the Southern District of Florida in the related case of *Sunrise Village Mobile Home Park v. Phillips & Jordan, Inc.*, 94–0101–CIV–HURLEY (S.D.Fla. Apr. 23, 1996), discussed above, to argue that the pre-incident release executed between the plaintiffs and the government, which the federal district court found insufficient under Florida law to release future negligence claims against Phillips & Jordan, also should be extended "by analogy" not to bar future contract or other claims against the United States.

The district court's opinion in *Sunrise Village*, regarding the release language, which is identical to the release language entered into by the parties in the instant *Dureiko* case, stated: "while this language may be broad enough to sweep many types of claims within its reach, it is not specific enough to constitute the sort of clear and unequivocal statement required for release from negligence claims." *Id.* at 7. The plaintiffs in the instant action allege, however, that they are not seeking claims for negligence, framed in tort, but have brought a complaint "which sounds in contract and for a taking." Therefore, according to the plaintiffs, the district court's analysis and conclusion that the pre-

incident release did not bar the negligence claims against Phillips & Jordan under Florida law, should also not bar the plaintiffs' contract and takings claims against the United States. The argument by plaintiffs, however, is not persuasive for the pre-incident release was not signed by Phillips & Jordan, it was executed only on behalf of the plaintiffs and the United States. Moreover, prior to release of the judge's opinion, the United States already had been dismissed from the law suit.[7] In addition, the district court's holding that this pre-incident release "language may be broad enough to sweep many types of claims within its reach" could be interpreted to include as protected from suit by the release language precisely the types of claims raised against the United States in this court. *Id.* at 6–7.

The language of the pre-incident release, signed by the parties to this action, specifically addresses "the federal government's undertaking the demolition of mobile homes and removal of the debris from the [Pine Isle] mobile home park" and explicitly releases the defendant "from all claims of whatever nature arising from such demolition and removal." This release was executed in conjunction with the agreement to lease to FEMA lots for temporary trailers, and, thus, evidently was part of the bargained for exchange that was put into writing. It is significant that the plaintiffs argument that this release was entered into under duress or imposed by exercise of undue influence is unsupported in the record and is contrary to the fact that Pine Isle management could have rejected the offer to lease lots to FEMA. Moreover, the plaintiffs' affirmative statement in the pleadings that the cleanup costs would have passed through to mobile home owners and insurance carriers, likewise undermines the plaintiffs' contentions of duress and undue influence because this fact is demonstrative of the alternatives for the cleanup of Pine Isle that were available to the plaintiffs.[8] Plaintiffs made a knowing

---

7. This reasoning is reinforced by the ultimate resolution of the district court action, between the plaintiffs and Phillips & Jordan via settlement. The settlement was for a sum certain paid by Phillips & Jordan to the plaintiffs.

8. The plaintiffs state that "[t]he clean-up by private contractors would have been costly, but would have been passed on by Pine Isle to the numerous owners of the damaged mobile homes and, in most cases, would have been borne by

election to utilize the services offered by the United States to cleanup their site and knowingly signed a general release.

■ In addition, the mutually executed pre-incident release would be rendered meaningless if ignored by this court when assessing the viability of the instant claims before the court. "As a general rule, the execution of an unrestricted release, pursuant to a government contract, bars the later assertion of claims against the government with respect to that contract." *Dairyland Power Cooperative v. United States*, 27 Fed. Cl. 805, 811–12 (1993), *aff'd*, 16 F.3d 1197 (Fed.Cir.1994) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391–92 (Fed.Cir.1987); *J.G. Watts Constr. Co. v. United States*, 161 Ct.Cl. 801, 805, 1963 WL 8559 (1963); *A & A Insulation Contractors, Inc. v. United States*, 26 Cl.Ct. 371, 373 (1992)).

Another legal matter in contention is whether collateral estoppel or issue preclusion renders plaintiffs without a viable claim in this court. The United States District Court for the Southern District of Florida in an action styled *Dureiko v. Phillips & Jordon, Inc.*, No. 95–1441–CIV–MOORE, dismissed the United States as a party pursuant to the Stafford Act and the FTCA, 28 U.S.C. § 2680(a), premised upon the discretionary function language contained in both acts. 1996 WL 825402 at *2. The district court action was brought under the FTCA against the United States and, on a third-party beneficiary theory, against the contractor, Phillips & Jordan. The government argues that the plaintiffs may not relitigate "the issue of the Government's discretion with regard to its supervision of debris removal operations in the aftermath of Hurricane Andrew because that issue has already been fully litigated [on identical facts] and decided against the plaintiffs" in the United States District Court. The plaintiffs respond, however, that in the instant case they are seeking contract based and constitutional remedies that were not available in the district court action, and not relief under the FTCA.

the individual insurance carriers of the existing

The related doctrines of collateral estoppel (issue preclusion) and *res judicata* (claim preclusion) were summarized by the United States Supreme Court as follows:

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. Sac County*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621–624 (2d ed.1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); *id.*, § 48 (bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Southern Pacific R. Co., supra*, at 49, 18 S.Ct. 18; *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial

Pine Isle tenants."

action by minimizing the possibility of inconsistent decisions.

*Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (footnote omitted).

The doctrines of *res judicata* and collateral estoppel operate to prevent the re-litigation of a claim or issue that has already had its day in court. *Mark Smith Constr. Co. v. United States,* 15 Cl.Ct. 32, 35–36 (1988). By affording a claimant only one opportunity to obtain redress, the doctrines conserve judicial resources, foster reliance upon judicial decisions, and protect litigants from vexatious and needless litigation. *Id.* at 36; *Martin v. United States,* 30 Fed.Cl. 542, 546, *aff'd,* 41 F.3d 1519 (Fed.Cir.1994); *Lins v. United States,* 4 Cl.Ct. 772, 777, *aff'd,* 758 F.2d 666 (Fed.Cir.1984).

■ The United States Court of Appeals for the Federal Circuit has stated:

The doctrine of collateral estoppel, also called issue preclusion, bars parties to a prior lawsuit from relitigating any issues that were actually and necessarily determined by a court of competent jurisdiction in the prior suit. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The doctrine serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* at 326, 99 S.Ct. at 649. Affording a litigant more than one full and fair opportunity for judicial resolution of the same issue results in an untenable misallocation of resources. *Blonder–Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971).

Collateral estoppel is appropriate only if: (1) the issue to be decided is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the parties had a full and fair opportunity to litigate the issue in the first action. *Mother's Restaurant, Inc. v.*

*Mama's Pizza, Inc.,* 723 F.2d 1566, 1569, 221 USPQ 394, 397 (Fed.Cir.1983).

*Arkla, Inc. v. U.S.,* 37 F.3d 621, 623–24 (Fed. Cir.1994), *cert. denied sub nom., NorAm Energy Corp. v. United States,* 514 U.S. 1035, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995). "Factual differences must be material, i.e., having legal significance, to prevent operation of collateral estoppel." *Arkla, Inc. v. U.S.,* 37 F.3d at 625 (citing *Montana v. United States,* 440 U.S. at 162, 99 S.Ct. 970).

"[T]he defense of collateral estoppel based on a final judgment ... in another suit 'can be timely made at any stage of the affected proceedings.'" *Mendenhall v. Barber–Greene Co.,* 26 F.3d 1573, 1579–80 (Fed.Cir. 1994), *as corrected on rehearing* (Sept. 14, 1994), *cert. denied sub nom., Mendenhall v. Astec Industries, Inc.,* 513 U.S. 1018, 115 S.Ct. 582, 130 L.Ed.2d 496 (1994) (citations omitted). The United States Court of Appeals for the Federal Circuit also has spoken to the necessary degree of finality of an earlier decision in order to invoke collateral estoppel, as follows:

A determination is conclusive in a subsequent action between the same parties only when the "issue of fact or law is actually litigated and determined by a valid and final judgment." Restatement (Second) of Judgments § 27 (1982) (emphasis added). *See also Young Engineers, Inc. v. U.S. Int'l Trade Comm'n,* 721 F.2d 1305, 219 USPQ 1142 (Fed.Cir.1983). One important factor that is considered in determining the finality of a decision for the purposes of preclusion is whether the decision was ever subject to appeal. *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). In *Lummus Co.,* 297 F.2d at 89, Judge Friendly stated that whether a "non-final" judgment "ought nonetheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *See also Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990, 996 (7th Cir.1979), *cert.*

*denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). The Restatement (Second) of Judgments § 13 comment g (1982) also indicates that a decision that is not subject to appeal is not final for the purposes of issue preclusion. *See also Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 227 USPQ 543 (Fed.Cir.1985). *Block v. U.S. Int'l Trade Comm'n,* 777 F.2d 1568, 1571–72 (Fed.Cir.1985). Furthermore, in *Interconnect Planning Corp. v. Feil,* the United States Court of Appeals for the Federal Circuit also stated with regard to finality:

> Considering the finality issue, for collateral estoppel to arise the prior decision need not have been final in the sense of 28 U.S.C. § 1291 but, in the words of the Restatement, the prior adjudication must have been "sufficiently firm to be accorded conclusive effect". Restatement (Second) of Judgments § 13 (1982). Sufficient firmness, according to the Restatement, requires that the party against whom the estoppel is asserted have had the right, even if not exercised, to challenge on appeal the correctness of the earlier decision. Restatement (Second) of Judgment, § 13 reporter's note comment f (1982).

774 F.2d 1132, 1135 (1985).

■ As this court stated earlier, it is readily apparent that the discretionary function language in the Stafford Act bars plaintiffs' breach of contract claim. This determination also was reached by two United States District Court judges, given parties and facts identical in one case and very similar in the other, to those presented in the above-captioned case, even though the district court judges examined the issue in the context of tort claims over which they had jurisdiction. Specifically, the issue that was and is in contention can be stated as whether the acts of FEMA and the Corps in supervising the same contractor, Phillips & Jordan, while completing disaster relief during the aftermath of Hurricane Andrew, falls under the discretionary function exception contained in the Stafford Act. It is the opinion of the court that the application of the discretionary function language in the Stafford Act was previously and fully litigated and resolved in *Dureiko, et al. v. Phillips & Jordan, Inc. and the United States,* No. 95–1441–CIV–MOORE. Relitigation of this issue in this court simply allows plaintiffs a second opportunity to try to obtain redress, drains judicial resources, attempts to create inconsistent judicial decision making, and forces the defendant to engage in extended and unneeded litigation. Moreover, as noted above, this court reaches the same conclusion on the application of the Stafford Act to the facts alleged in the above-captioned case.

In the current action the plaintiffs also allege that "the taking and inverse condemnation of Plaintiff's [sic] property by FEMA and the Army Corps, in volition [sic] of the 5th Amendment of the U.S. Constitution was a violation of a mandatory function—a contract setting forth specific mandates, including federal guidelines." Plaintiffs state that the acts of the United States were "illegal and uncompensated destruction of private property." Plaintiffs also state that the government's "failure to honor its contracts" with the plaintiffs was a deprivation of property.

The Tucker Act grants the United States Court of Federal Claims jurisdiction to entertain claims alleging that the government has taken private property for public use in violation of the Fifth Amendment of the United States Constitution. The United States Supreme Court has declared: "[i]f there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [Claims Court] to hear and determine." *Preseault v. ICC,* 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (quoting *United States v. Causby,* 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)); *see Narramore v. United States,* 960 F.2d 1048, 1052 (Fed.Cir.1992); *Perry v. United States,* 28 Fed.Cl. 82, 85 (1993).

The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. The purpose of the Fifth Amendment is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by

the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). "The government action upon which the takings claim is premised must be authorized, either expressly or by necessary implication, by some valid enactment of Congress." *Short v. United States,* 50 F.3d 994, 1000 (Fed.Cir.1995) (quoting *Langenegger v. United States,* 756 F.2d 1565, 1572 (Fed.Cir.1985); *Southern Cal. Fin. Corp. v. United States,* 634 F.2d 521, 523, 225 Ct.Cl. 104 (1980)).

■ Plaintiffs' allegations raise a number of issues, but at times confuse a number of distinct causes of action. Plaintiffs state that the government is being sued for acts that were "a violation of a mandatory function," or in other words these actions were either unauthorized or illegal. As stated above, a claim of an illegal taking, premised upon unauthorized acts or acts in violation of federal guidelines, is not a viable taking claim and jurisdiction cannot be found in this court. *See Short v. United States,* 50 F.3d at 1000; *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 802 (Fed.Cir.1993); *Florida Rock Industries, Inc. v. United States,* 791 F.2d 893, 899 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987). Moreover, if the government's actions allegedly breached a contract, the appropriate remedy is a breach of contract claim, not a claim for compensation pursuant to the Takings Clause. *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 768–770, 572 F.2d 786, 818 (1978); *see generally United States v. Winstar,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

■ As our predecessor court stated in *Sun Oil Co. v. United States,* in delineating the distinction:

the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. *See J.J. Henry Co. v. United States,* 188 Ct.Cl. 39, 46, 411 F.2d 1246, 1249 (1969). In such instances, interference with such contractual rights generally

gives rise to a breach claim not a taking claim. . . . Before a taking can be established, it must be clear that there was an intent by defendant to take private property.

*Sun Oil Co. v. United States,* 215 Ct.Cl. at 770, 572 F.2d at 818. It is apparent that the plaintiffs have failed to state a viable takings claim in this court. The allegation, if it is actionable, arises from an alleged contract, during performance of which the government is alleged to have committed unauthorized acts, and based upon which there was no intent by the United States to take the plaintiffs' property.

■ Finally, to the extent that plaintiffs' claim implies that the government acted negligently or so as to fraudulently induce plaintiffs to enter into a lease agreement that the United States had no intention of fulfilling and, thus, that the actions by the government entitles the plaintiffs to damages, such claims would allege tortious behavior by government officials.[9] Jurisdiction to resolve claims sounding in tort does not lie in this court. This court's jurisdictional statute, the Tucker Act, explicitly states, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . not sounding in tort." 28 U.S.C. § 1491(a)(1) (1994); *see also Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993). In reviewing the jurisdiction of this court, the United States Court of Appeals for the Federal Circuit has stated the following:

It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked—jurisdiction to entertain tort claims. The Tucker Act expressly provides that the "United States Court of Federal Claims shall have jurisdiction . . . in cases *not* sounding in tort." 28 U.S.C. § 1491(a)(1)(1988) (emphasis added), *as amended by* Federal Courts Administration Act of 1992, Pub.L. No. 102–572,

9. It is also apparent that the discretionary function exception contained in the Stafford Act and the FTCA would bar this count sounding in tort

in its entirety, as decided in the related district court actions discussed above.

§ 902(a), 106 Stat. 4506; *see Aetna Casualty and Surety Co. v. United States,* 655 F.2d 1047, 1059, 228 Ct.Cl. 146 (1981).

*Shearin v. United States,* 992 F.2d at 1197 (emphasis in original).

■ Jurisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act. 28 U.S.C. 1346(b) (1994);[10] *see also Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir.1992); *Martinez v. United States,* 26 Cl.Ct. 1471, 1476 (1992), *aff'd,* 11 F.3d 1069 (Fed.Cir.1993). Plaintiffs' claims for monetary damages, if they could be construed to arise from alleged negligent and wrongful conduct of the defendant in the course of discharging official duties, would be claims clearly sounding in tort. *See Smithson v. United States,* 847 F.2d 791, 794 (Fed. Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Berdick v. United States,* 222 Ct.Cl. 94, 99, 612 F.2d 533, 536 (1979); *Curry v. United States,* 221 Ct.Cl. 741, 746, 609 F.2d 980, 982–83 (1979); *Blazavich v. United States,* 29 Fed.Cl. 371, 374 (1993). Therefore, this court has no jurisdiction over the allegations asserted by plaintiffs, which may be characterized as based upon tortious conduct, including plaintiffs' claim of fraudulent inducement to contract.

## *CONCLUSION*

Based on the discussion above, the defendant's motion to dismiss in the above-captioned case is, hereby, **GRANTED.**

**IT IS SO ORDERED.**

---

10.  28 U.S.C. § 1346(b) provides:

(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b).