822 F.2d 982
 XANADU OF COCOA BEACH, INC., Plaintiff-Counterclaim Defendant-Appellee,
v.
Marvin A. ZETLEY, Defendant-Counterclaim
Plaintiff-Third-Party Plaintiff-Appellant,
v.
C & C DEVELOPMENT, INC. and Kenneth E. Alles, Third-Party
Defendants-Appellees.
 No. 86-3346.
 United States Court of Appeals,
Eleventh Circuit.
 July 24, 1987.
 
 1
 Irving D. Gaines, Milwaukee, Wis., for Zetley.
 
 
 2
 Bruce W. Jacobus, Cocoa Beach, Fla., for Xanadu of Cocoa Beach.
 
 
 3
 Robert E. Stone, Wolfe, Kirschenbaum & Mosley, Cocoa Beach, Fla., for C & C Development & Kenneth E. Alles.
 
 
 4
 Appeal from the United States District Court for the Middle District of Florida.
 
 
 5
 Before TJOFLAT and HILL, Circuit Judges, and LYNNE*, Senior District Judge.
 
 LYNNE, Senior District Judge:
 
 6
 This is an appeal from a judgment for the plaintiff in an ejectment action. On appeal, the unsuccessful defendant makes the following contentions: (1) that the trial court erred by failing to consider the doctrine of part performance, which might have enabled the defendant to prove the existence of an oral agreement to convey the subject realty; (2) that the trial court erred by failing to consider various agency doctrines that might have bound the plaintiff to such a contract; (3) that the trial court erroneously found the defendant's counterclaim to be barred by release; (4) that the trial court erroneously failed to consider the defendant's equitable defenses; and (5) that the trial court erroneously failed to grant the defendant affirmative relief based upon its counterclaim. We agree with the appellant and reverse the court below.
 
 I. THE FACTS
 
 7
 The subject realty of the ejectment action below was Penthouse 2, a unit of Xanadu Condominiums at Cocoa Beach, Florida. Xanadu was a joint venture of the Sunflower Club, Inc., and Xanadu of Cocoa Beach, Inc. Xanadu Joint Venture held record title to the subject realty from October 31, 1980, when Sunflower and Xanadu of Cocoa Beach entered into the joint venture agreement, until April 18, 1984, when the joint venture was dissolved.
 
 
 8
 On May 20, 1982, the appellant entered into an agreement with Sunflower and Kenneth Alles, who was an officer and owner of Sunflower. According to the terms of the agreement, Alles and Sunflower would convey to Zetley several Xanadu condominium units, including Penthouse 2 and Unit 1204. In return, Zetley would convey to Alles his interest in the Brown Dear Racquet Club, in Milwaukee, Wisconsin. Alles was to assure delivery of the condominium units to Zetley on or before April 1, 1983; or failing that, was to pay Zetley $500,000 cash without interest, on May 1, 1984.
 
 
 9
 Because Alles failed to deliver title to Penthouse 2 and Unit 1204 on April 1, 1983, he and Zetley signed a mutual general release dated October 6, 1983. In that document, Alles agreed to deliver title to Penthouse 2 on or before March 1, 1984; if he could not deliver title on that date, then he would be indebted to Zetley in the amount of $350,000, upon which interest of 20 per cent per annum would accrue retroactively from October 1, 1983.
 
 
 10
 In October of 1983, Zetley took possession of Penthouse 2, allegedly with the aid of employees of Xanadu of Cocoa Beach, which shared offices with Sunflower for the purposes of the joint venture. Specifically, Zetley alleges, an employee of Xanadu of Cocoa Beach or of Towne Realty, of which Xanadu of Cocoa Beach was a wholly-owned subsidiary, gave Zetley the key to Penthouse 2, and helped him to furnish the penthouse. Zetley moved to Penthouse 2 in December of 1983. On October 10, 1983, Zetley executed a general release in favor of Xanadu of Cocoa Beach, Towne Realty, all of their agents, and others, in return for free and clear title to Xanadu Unit 1204. The release did not name Xanadu Joint Venture, which at the time held record title to Penthouse 2.
 
 
 11
 Alles never delivered title to Zetley for Penthouse 2, and on April 18, 1984, Sunflower and Xanadu of Cocoa Beach terminated Xanadu Joint Venture. Also on that date, Xanadu Joint Venture conveyed Penthouse 2 by warranty deed to Xanadu of Cocoa Beach. Zetley apparently received no demand for possession of the unit until November, 1984, when he was served with the complaint that initiated this lawsuit. After a bench trial, the district court awarded possession of Penthouse 2, along with $45,000 rent, to Xanadu of Cocoa Beach. The court also found that third-party defendant, Kenneth Alles, was indebted to Zetley in the amount of $350,000, plus $75,000 liquidated damages, and interest. The district court further found that Zetley should take nothing on his counterclaim.
 
 II. DISCUSSION
 
 12
 A. Choice of Law.
 
 
 13
 In the proceedings below, the parties and the court assumed that, because the contract between Alles and Zetley was signed in Wisconsin, Wisconsin law would determine the contract's validity, and would resolve questions concerning its formation. In Florida, however, the validity of a contract to convey an interest in real estate is governed by the law of the state in which the real estate lies. Connor v. Elliott, 79 Fla. 513, 85 So. 164, 165 (1920); Kyle v. Kyle, 128 So.2d 427 (Fla.Dist.Ct.App.1961). Because the realty lies in Florida, and because Florida is the forum state, all aspects of the contract--formation, validity, performance, and remedies--are to be determined in accordance with the principles of Florida law. The law of Florida, therefore, governs the validity and interpretation of any document or oral agreement intended to convey, or having the effect of conveying, any legal or equitable interest in Penthouse 2.
 
 
 14
 B. Agency and Part Performance.
 
 
 15
 In his counterclaim, Zetley sought to hold Xanadu of Cocoa Beach liable for specific performance of Alles' and Sunflower's contract to convey Penthouse 2. Although Xanadu of Cocoa Beach was not named in any such agreement, Zetley sought to prove his case by relying upon principles of agency and upon the doctrine of part performance, neither of which the trial court considered. According to Florida law, however, a vendee is entitled to specific performance of an oral contract to convey realty if he can prove the terms of the contract and the following: (1) that he has paid part or all of the purchase price; (2) that he has taken possession of the realty; and (3) that he has made valuable improvements with the consent or acquiescence of the vendor. Baker v. Rice, 37 So.2d 837 (Fla.1948). The undisputed facts in this case are that Zetley paid valuable consideration for the realty (at least to Alles), that he entered into possession of Penthouse 2, and that he made valuable improvements with the knowledge of officers of Xanadu Joint Venture.[1] Under these facts, it was error not to allow Zetley to prove that Xanadu Joint Venture might have been obligated to convey Penthouse 2.
 
 
 16
 The undisputed facts show that the appellant is entitled to avail himself of the doctrine of part performance. By no means, however, is the doctrine a substitute for a contract; rather, it prevents the party who denies the contract's existence from asserting the statute of frauds. To prevail on its counterclaim, therefore, Zetley must prove that Xanadu of Cocoa Beach is bound by contract, either oral or written, to convey Penthouse 2 to Zetley. Moreover, no principle of Florida law precludes Zetley from proving his case by relying upon any of the various principles of agency, whether implied, apparent, actual, or by estoppel.
 
 
 17
 Xanadu of Cocoa Beach could be contractually bound under either of the two following theories: First, at least for the purposes of this transaction, Alles may have been the agent of Xanadu of Cocoa Beach directly. For example, officers of Xanadu of Cocoa Beach might have led Zetley to believe that Alles was acting at their instigation and representing their interests. Second, Xanadu of Cocoa Beach might be bound by virtue of its having been a partner in the Xanadu Joint Venture. The joint venture, if a partnership, would be bound by the act of either of its members "for apparently carrying on in the usual way the business of the partnership." Fla.Stat.Ann. Sec. 620.60(1) (West 1977).[2] If the joint venture were not a partnership, then the parties might be liable under Fla.Stat.Ann. Sec. 620.60(1) (West 1977), which codifies the doctrine of partnership by estoppel.
 
 
 18
 C. The Release.
 
 
 19
 As with the original contract to convey Penthouse 2, the parties in the trial court assumed that Wisconsin law governed the validity of the release signed by Zetley on October 10, 1983. That document is relevant to this lawsuit only insofar as it is purported to release an equitable interest owned by Zetley in Penthouse 2. For the purposes of this lawsuit, therefore, it is a contract to convey an interest in real property, a contract whose validity, interpretation, and effect are governed by Florida, not Wisconsin, law.
 
 
 20
 The appellant's counterclaim stated essentially two types of claims against Xanadu of Cocoa Beach. First, Zetley stated a claim for specific performance of a contract to convey Penthouse 2. Second, Zetley claimed that Xanadu of Cocoa Beach participated in a fraud that deprived Zetley of his right to receive title to Penthouse 2. The district court held that the release barred both claims, and we reverse. First, with respect to the fraud claim, no fraud could have been consummated until it was impossible for the partnership to convey Penthouse 2. Because the partnership could have conveyed Penthouse 2 anytime prior to its dissolution, the fraud claim could not have accrued until after the release was signed. A release cannot affect a claim that has not yet matured. Ciliberti v. Ciliberti, 416 So.2d 48 (Fla.Dist.Ct.App.1982).
 
 
 21
 As for the contract claim, the court notes that the release did not mention Xanadu Joint Venture, which held record title to Penthouse 2 at the time of the release's execution. Joint ventures in Florida are governed by the principles of partnership law.[3] When a partnership holds legal title to realty, it does so as an entity separate and distinct from its partners. See Fla.Stat.Ann. Sec. 620.595(3) (West 1977); see also Century Bank v. Gillespy, 399 So.2d 1109 (Fla.Dist.Ct.App.1981). If Zetley can prove that the joint venture was the obligor of an agreement to convey Penthouse 2, then the release of Xanadu of Cocoa Beach would not have operated ipso facto as a release of Xanadu Joint Venture, and the claim would not have been extinguished by the partnership's dissolution or winding down. Fla.Stat.Ann. Sec. 620.735(1) (West 1977). Thus, the October 10, 1983, letter agreement would not have released the partnership of its obligation, if any existed, to convey Penthouse 2; and, regardless of whatever claim was released against Xanadu of Cocoa Beach on October 10, Xanadu of Cocoa Beach assumed the partnership's obligation when it received title to the condominium unit. The release, therefore, would not bar such a claim, but only such claims as existed against Xanadu of Cocoa Beach, in its own right, on October 10, 1983.
 
 
 22
 D. Equitable Defenses.
 
 
 23
 The trial court clearly erred in refusing to consider the equitable defenses of laches and equitable estoppel, both of which are available against ejectment actions in Florida. Brown v. Johns, 312 So.2d 526, 527 (Fla.Dist.Ct.App.1975) (citing Cowgill v. Hopkins, 52 So.2d 343 (Sup.Ct. of Fla.1951), and Bridgehead Land Co. v. Hale, 145 Fla. 389, 199 So. 361 (1940)). The trial court erroneously cites Bridgehead Land Co. v. Hale, 145 Fla. 389, 199 So. 361 (1940), to support the proposition that the defense of laches is not available to a defendant who has not held record title. This court finds nothing in Hale that would support such an interpretation.
 
 
 24
 This court is also of the opinion that the appellant might avail itself of the defense of equitable estoppel. True, the appellant did not plead estoppel explicitly, but the appellant's evidence supports an inference of estoppel, and the appellant pleaded fraud both in its counterclaim and as a defense. According to Florida law, fraud is a basis for invoking the doctrine of equitable estoppel. See Rinker Materials Corp. v. Palmer First National Bank & Trust Co., 361 So.2d 156, 157 (Fla.1978). Federal courts have the power to fashion equitable relief (such as applying the doctrine of estoppel) when facts warranting such relief have been pleaded and proved.
 
 III. CONCLUSION
 
 25
 The appellant will be entitled to affirmative relief if he proves, in accordance with this opinion, either that the appellee breached an obligation it owed to convey Penthouse 2, or that the appellee defrauded appellant of some sort of right to have Alles convey Penthouse 2. The order of the district court is therefore REVERSED and REMANDED for further proceedings in accordance with this opinion.
 
 
 
 *
 Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Knowledge of or notice to a partner, pertaining to a "matter concerning partnership affairs" is imputed to the partnership. Fla.Stat.Ann. Sec. 620.615 (West 1977)
 
 
 [2]
 We find that Fla.Stat.Ann. Sec. 620.605 is not the only means by which a partnership might be held obligated under a contract to convey real property. For example, if a partnership led a third party to believe that it would honor a contract not naming the partnership and signed by only one partner, then the partnership should be held estopped from denying its liability. See Fla.Stat.Ann. Sec. 620.575(2) (West 1977)
 Moreover, we interpret Fla.Stat.Ann. Sec. 620.60 as providing that a partnership may be liable under a contract to convey realty, even if the partnership is not actually named, if that is the partnership's usual way of conducting business, and the obligee, in dealing with the partnership, is led to believe, by words or actions, or by silence in certain circumstances, that the partnership will continue to conduct business in that manner.
 
 
 [3]
 Joint ventures in Florida are governed by the law of partnership if they meet the statutory requisites in Fla.Stat.Ann. Sec. 620.585 (West 1977). But even if Sunflower and Xanadu of Cocoa Beach were not partners as between themselves, they might be liable for holding themselves out as partners to third parties. Fla.Stat.Ann. Sec. 620.635 (West 1977)