Joseph DUREIKO, as Trustee, and
Southern Pine Isle Corporation,
Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 99–5043.

United States Court of Appeals,
Federal Circuit.

April 14, 2000.

James W. McDonald, Jr., McDonald & Associates Attorneys At Law, Chartered, of Homestead, Florida, argued for plaintiffs-appellants.

Matthew P. Reed, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director.

Before MICHEL, RADER, and SCHALL, Circuit Judges.

MICHEL, Circuit Judge.

On January 21, 1997, Joseph Dureiko ("Dureiko") and Southern Pine Isle Corporation ("SPIC") (collectively, "Pine Isle") brought suit against the United States in the United States Court of Federal Claims for (1) breach of contract, (2) a governmental taking in violation of the Fifth Amendment, (3) an inverse condemnation in violation of the Fifth Amendment, and (4) fraud in the inducement. On December 9, 1998,

the trial court dismissed all of Pine Isle's claims on the pleadings. *Dureiko v. United States*, 42 Fed.Cl. 568 (1998) ("*Dureiko II*"). Pine Isle appeals the dismissal of all of its claims except for fraud in the inducement. We hold that the trial court improperly held that the government's actions allegedly constituting a breach of its contract with Pine Isle were "discretionary" for purposes of the "discretionary function exception" of the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. § 5148 (1994), that Pine Isle was collaterally estopped from disputing the discretionary nature of the government's actions, and that the release signed by Pine Isle barred its claims. We also hold, however, that the trial court correctly held that Pine Isle's taking and inverse condemnation claims were legally inadequate. Therefore, we affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

SPIC operates the Pine Isle Mobile Home Park ("Park") in Dade County, Florida. SPIC leases the property from Dureiko, the trustee of the Joseph E. Dureiko Restated and Amended Revocable Trust Agreement and the Arlene M. Dureiko (Deceased) Restated and Amended Revocable Trust Agreement.

On August 24, 1992, Hurricane Andrew struck Southern Florida and severely damaged the mobile homes and property at the Park. Metropolitan Dade County subsequently declared the Park to be uninhabitable and ordered the removal of the

damaged or destroyed mobile homes and related debris. The federal government declared Southern Florida to be a disaster area and authorized the Federal Emergency Management Agency ("FEMA")[1] and the Army Corps of Engineers ("Corps") to participate in the recovery and reconstruction of the areas in Southern Florida affected by the hurricane.

FEMA sought sites on which to place temporary housing for persons displaced by the hurricane and from which to operate its relief efforts. FEMA approached Pine Isle about leasing sites at the Park after Pine Isle completed its own cleanup efforts. Pine Isle declined, preferring to lease Park sites to its own private lessees.

FEMA then offered to clean up the Park at the government's expense in exchange for Pine Isle's agreement to lease FEMA sites at the Park. According to Pine Isle, FEMA and Pine Isle discussed the specifics of the proposed Park cleanup. Dureiko had allegedly witnessed damage to other mobile home parks at the hands of the government's cleanup contractors, and thus demanded FEMA's assurances that the FEMA cleanup contractor would: (1) use rubber-tired equipment as opposed to caterpillar track equipment; (2) preserve the infrastructure of the Park, including utilities, pads, and driveways; (3) handpick or hand-rake the debris around utilities, pads, and driveways; (4) restore the property to its pre-hurricane condition or better; and (5) repair or replace utilities pursuant to the Dade County Code. FEMA allegedly agreed that its cleanup would satisfy each of these terms, and in fact presented Pine Isle with a sample task

---

**1.** FEMA furnishes federal disaster relief assistance to state and local governments. *See* 44 C.F.R. § 206.3(a) (1999). Such assistance is triggered when the governor of the affected state determines that state and local resources are insufficient to respond to a disaster and asks the President to declare a "major disaster" and the President, in turn, does so. 42 U.S.C. § 5170; *see* 44 C.F.R. § 206.36 (1999).

The Stafford Act authorizes FEMA to provide temporary housing assistance, which may consist of mobile homes or sites upon which to locate mobile homes, as appropriate. *See* 42 U.S.C. § 5174(a). The Stafford Act also authorizes FEMA to remove disaster-related debris from public and private areas. *See* 42 U.S.C. § 5173(a).

order that included these terms.[2] The Corps allegedly confirmed and ratified these conditions, promised to post personnel at the Park to ensure that the manner of cleanup satisfied these conditions, and promised to execute a task order reflecting these conditions.

According to Pine Isle, FEMA and Pine Isle contemporaneously executed a simple written agreement (now lost) memorializing these cleanup standards. Pine Isle also allegedly executed, at FEMA's request, a simple memorandum memorializing the number of lots that it would be leasing to FEMA. At some point, Dureiko, acting on behalf of SPIC, and FEMA representatives signed an undated "Release for Demolition of Mobile Home Park and Removal of Debris," which provides:

> The undersigned hereby certifies and warrants that he is the owner or authorized agent of the owner or authorized agent of the owner [of] the [Pine Isle Mobile Home Park] ... which has been declared uninhabitable under Chapter 17C of the Code of Metropolitan Dade County, Florida. In consideration for Dade County or the federal government's undertaking the demolition of mobile homes and removal of the debris from the above mobile home park, the undersigned hereby releases Dade County, State of Florida, and the United States Government, and their respective officers, employees and contractors from all claims of whatever nature arising from such demolition and removal.

On September 3, 1992, FEMA hired Phillips & Jordan, a contractor, to remove debris from the Park. On September 17, 1992, FEMA forwarded to Phillips & Jordan Task # 4, a task order prepared by the Corps. Task # 4, entitled "Debris Removal at Pine Isle Mobile Home Park,"

reflected the special debris-removal procedures designed to protect the Park and allegedly requested by Pine Isle. For example, Task # 4 stated:

> The Contractor shall use only rubber-tired equipment in the performance of this contract.... The Contractor shall repair all damage to existing grade, road shoulders, underground/aboveground utilities, trees, shrubs, and grassed areas caused by the Contractor's equipment or personnel. The Contractor shall preserve and protect all existing structures which have not been designated for demolition. The Contractor shall preserve and protect vegetation such as trees, shrubs, and grass on or adjacent to the area of work.

On September 21, 1992, FEMA signed over 100 leases for mobile home sites at the Park. On approximately September 28, 1992, the Corps sent Phillips & Jordan Task # 12, entitled "Utility Repair at Pine Isle Mobile Home Park," which reflected the standards for utility repairs at the Park. Among other things, Task # 12 provided:

> The contractor shall perform all necessary work to inspect, remove, repair, or replace to pre-Andrew condition in accordance with current codes all sewer, water, and electric facilities affecting the 100 lots assigned to the Federal Emergency Management Agency.... These sites shall be completed in such a manner that allows trailers to be brought onto sites, hooked-up, and made fully operational.

In 1994, Pine Isle filed a claim for compensation with the Corps arising from Phillips & Jordan's alleged non-compliance with Tasks # 4 and # 12. Pine Isle claimed that Phillips & Jordan had indiscriminately demolished everything above-

---

2. The parties do not dispute that, at the very least, FEMA agreed to remove the debris from the Park at the government's expense in ex-

change for the ability to lease mobile home lots from Pine Isle.

ground and below-ground at the Park, including utilities, concrete mobile home pads, concrete patios, asphalt paving, roads, driveways, vegetation, and topsoil. Pine Isle also alleged that Phillips & Jordan had improperly used caterpillar-type equipment and that its repairs and installation of utilities did not conform to the local codes. Pine Isle claimed that this damage to the Park prevented Pine Isle from leasing the Park for its full economic value, and requested compensation totaling $2,000,000. On July 19, 1995, the Corps denied Pine Isle's claims.

Pine Isle then filed suit against Phillips & Jordan and the United States in the United States District Court for the Southern District of Florida. Pine Isle claimed that Phillips & Jordan's manner of debris removal had damaged the Park, and that FEMA and the Corps had negligently supervised and monitored Phillips & Jordan's cleanup operations. The district court dismissed the claims against the United States as barred by the Stafford Act, which immunizes the United States against claims arising from "discretionary" acts undertaken by the federal government during disaster relief activities, *see* 42 U.S.C. § 5148, and as barred by the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680 (1994), which protects the federal government from tort claims arising from its "discretionary" acts, *see* 28 U.S.C. § 2680(a). *Dureiko v. Phillips & Jordon, Inc.,* No. 95–1441, 1996 WL 825402, at *1 (S.D.Fla. Apr.19, 1996) (*"Dureiko I "*).

On January 21, 1997, Pine Isle sued the United States in the United States Court of Federal Claims alleging that: (1) FEMA's manner of debris removal had breached its contract with Pine Isle; (2) FEMA's manner of debris removal denied Pine Isle any economically viable use of the Park, and thus constituted a governmental taking of private property for public use in violation of the Fifth

Amendment; (3) FEMA's manner of debris removal constituted an inverse condemnation in violation of the Fifth Amendment; and (4) FEMA and the Corps had fraudulently induced Pine Isle into entering into the lease agreements, because FEMA and the Corps had no intention of fulfilling their promise of allowing only rubber-tired equipment into the Park. Pine Isle sought damages approximating $2,000,000.

On December 9, 1998, the Court of Federal Claims granted the government's motion to dismiss under Rules of the Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(4). *Dureiko II,* 42 Fed.Cl. at 568. The Court of Federal Claims held that: (1) it lacked jurisdiction to consider Pine Isle's claims, since under the Stafford Act the United States was immune from suit; (2) the doctrine of collateral estoppel barred Pine Isle from re-litigating the United States' immunity from suit by the "discretionary function exception" of the Stafford Act, in view of the earlier decision by the United States District Court for the Southern District of Florida; (3) Pine Isle had released the United States from all claims arising out of its disaster relief activities at the Park; (4) Pine Isle's taking and inverse condemnation claims were not viable, since a claim for breach of contract was the appropriate remedy, the alleged government's actions were not authorized by an enactment of Congress, and the government did not intend to take the Park; and (5) the Court of Federal Claims lacked jurisdiction over the fraud in the inducement claim, since the claim sounded in tort. Pine Isle appeals the dismissal of all claims except its fraud in the inducement claim.

## DISCUSSION

### I. Discretionary Function Exception under the Stafford Act

■ The Court of Federal Claims dismissed Pine Isle's breach of contract claim

because it believed that it lacked subject matter jurisdiction because of the "discretionary function exception" of the Stafford Act. *See Dureiko II*, 42 Fed.Cl. at 576–77. The Stafford Act, also known as the Disaster Relief Act of 1974, immunizes the federal government from liability arising out of its performance of a "discretionary function":

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148.

■■■ The trial court noted the Supreme Court's analysis of the analogous and similarly stated discretionary function exception under the FTCA.[3] The Supreme Court has enunciated a two-prong test for determining whether the discretionary function exception under the FTCA applies: (1) whether the act involves an element of judgment or choice; and (2) if so, whether that judgment is of the kind that the discretionary function exception was designed to shield. *See United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Under the first prong, an act does not involve an element or judgment or choice if it is mandatory, i.e., if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *Id.* at 536, 108 S.Ct. 1954. Under the second prong, because the discretionary

function exception serves to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the exception "protects only governmental actions and decisions based on considerations of public policy," *Berkovitz*, 486 U.S. at 537, 108 S.Ct. 1954.

The Court of Federal Claims relied heavily upon *Dureiko I*, 1996 WL 825402, *Sunrise Village Mobile Home Park v. Phillips & Jordan*, 960 F.Supp. 283 (S.D.Fla.1996) ("*Sunrise I*"), and *Ornellas v. United States*, 2 Cl.Ct. 378 (1983), for its conclusion that the discretionary function exception barred Pine Isle's contract claim. In the related case of *Dureiko I*, the district court dismissed Pine Isle's tort claims against the United States as barred by the Stafford Act and the FTCA. *See Dureiko I*, 1996 WL 825402, at *2. Similarly, in *Sunrise I*, the district court dismissed another mobile home park's negligence claims against the United States as barred by the FTCA. *See Sunrise I*, 960 F.Supp. at 286–87. Finally, in *Ornellas*, the trial court held that the Stafford Act barred a party's suit for review of the Department of Agriculture's denial of disaster assistance benefits. *See Ornellas*, 2 Cl.Ct. at 380.

Pine Isle contends that the discretionary function exception is inapplicable here, since FEMA failed to act in accordance with multiple mandatory directives. *Cf. Phillips v. United States*, 956 F.2d 1071, 1076–77 (11th Cir.1992) (holding that the discretionary function exception to the FTCA did not apply to the Corps's failure

---

**3.** The FTCA exempts the government from liability for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exer-

cise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

to comply with its own safety regulations). For example, Pine Isle contends that FEMA failed to comply with the standards prescribed by Task # 4. Pine Isle further argues that FEMA ignored the Federal Acquisition Regulations ("FAR"), which require that government contractors "protect from damage all existing improvements and utilities ... at or near the work site." 48 C.F.R. § 52.236–9 (1999). Pine Isle also notes that the Corps's own Quality Assurance Plan requires that a Quality Assurance Representative "[a]ssure that utility outlets and other features that must not be damaged are marked before removal operations are started." Pine Isle maintains that, once FEMA contracted with Pine Isle for FEMA's cleanup of the Park under these terms in exchange for the right to lease mobile home sites, the contract mandated the government's course of conduct and the discretionary function exception ceased to apply.

The government responds that, because FEMA's cleanup of the Park was authorized, but not mandated, by 42 U.S.C. § 5173, all of its cleanup efforts must be deemed to be discretionary. The government disputes the effect of its contract with Pine Isle, and claims that it would be contrary to the plain language and congressional intent of the Stafford Act to permit Pine Isle to sue the government simply because FEMA chose to administer its relief activities via contract. The government offers the legislative history of the Stafford Act as supportive of its position:

> We have further provided that if the agencies of the Government make a mistake in the administration of the Disaster Relief Act that the Government may not be sued. Strange as it may seem, there are many suits pending in the Court of Claims today against the Government because of alleged mistakes made in the administration of other re-

lief acts, suits aggregating millions of dollars because citizens have averred that the agencies and employees of Government made mistakes. We have put a stipulation in here that there shall be no liability on the part of the Government.

96 Cong. Rec. 11895, 11912 (1950) (statement of Rep. Whittington, Chairman of the House Public Works Committee).

The government contends that it would be anomalous to immunize the decisions of top-level policy-makers, but not lower-level policy implementers carrying out relief policies, plans, and contracts. Finally, the government argues that the Supreme Court's two-prong test for the discretionary function exception under the FTCA collapses to a single inquiry under the Stafford Act, i.e., whether the act in question involves an element of judgment or choice. The government reasons that any act in furtherance of disaster relief necessarily promotes public policy. *Cf. Sunrise I*, 960 F.Supp. at 286 ("Implicit in this statute are the policies of protecting public safety and health and restoring order following a natural disaster.").

We review jurisdictional issues *de novo*. *See GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 481 (Fed.Cir. 1996). On review of a grant of a motion to dismiss, we accept the factual allegations in a complaint as true and ask whether the trial court's dismissal of the complaint was appropriate. *See Berkovitz*, 486 U.S. at 547, 108 S.Ct. 1954 (accepting, on review of a motion to dismiss, petitioners' factual allegations regarding the application of the FTCA's discretionary function exception as true). Consequently, we must assume that FEMA and Pine Isle contracted for FEMA's cleanup of the Park in accordance with the standards recited in Tasks # 4 and # 12 in exchange for Pine Isle's leasing mobile home sites to FEMA.[4]

We agree with Pine Isle that the Court of Federal Claims improperly dis-

---

4. We note that Pine Isle does not clearly artic-

ulate the nature of this alleged contract. For

missed its contract claim as barred by the discretionary function exception of the Stafford Act. The Supreme Court's pronouncements on the meaning of the term "discretionary" in the context of the FTCA are clear that "if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954; *see Gaubert*, 499 U.S. at 322–23, 111 S.Ct. 1267. As applied to the alleged facts of this case, once FEMA entered into a contract with Pine Isle, its acts pursuant to this contract no longer involved an element of judgment or choice. Rather, the contract mandated that FEMA's cleanup and restoration of the Park comply with the agreed-upon standards (subsequently reflected in Tasks # 4 and # 12), and FEMA's failure to do so breached this contract. For purposes of the discretionary function exception of the Stafford Act, we hold that a contract is indistinguishable from a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow, since "the employee has no rightful option but to adhere to [its] directive[s]."[5] *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.

■ We reject the government's assertion that the plain language and congressional intent of the Stafford Act bar Pine Isle's contract claim. The critical question is, of course, whether FEMA's acts were "discretionary." Although FEMA's initial decision to contract with Pine Isle necessarily involved "an element of judgment or choice," FEMA's subsequent compliance (or non-compliance) with the contract did not.

We are unconvinced by the government's contention that allowing a contract claim in this case would lead to the anomalous result that the acts of top-level policy-makers would be immunized against liability, but those of lower-level policy implementers would not be. The government's argument assumes that the lower-level policy implementers are acting in *compliance* with the policies conceived by top-level policy-makers. Where, as here, the lower-level policy-implementers are acting *contrary* to standards established by contract approved by higher-level officials, the discretionary function exception does not bar suit against the government. *Cf. id.* at 544, 108 S.Ct. 1954 ("When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply.").

We note that the government's position, if accepted, would allow it to avoid paying contractors such as Phillips & Jordan for their cleanup efforts. Applying the government's logic, its contract with Phillips & Jordan would also be in furtherance of disaster relief. Yet the government does not explain how this contract differs from the alleged contract with Pine Isle for the leasing of mobile home sites. We cannot agree that Congress intended the discretionary function exception to allow government agencies like FEMA to voluntarily contract with other parties in the course of providing disaster relief assistance, reap the benefits of such contracts but refuse to perform under them, and then claim im-

---

example, Pine Isle does not clarify whether the contract is entirely a physical document (represented simply by the now missing written agreement), or also oral in nature. Notwithstanding this ambiguity, Pine Isle clearly alleges that its contract required that FEMA's contractor clean up the Park according to standards subsequently recited in Tasks # 4 and # 12.

5. Given our holding that the government's obligations under its alleged contract with Pine Isle were not discretionary, we need not address Pine Isle's claim that the government's obligations under FAR and the Corps's Quality Assurance Plan (which were outside the scope of the contract) were also not discretionary.

munity for liability resulting from its non-performance. Nor do we find anything in the operative language of the Stafford Act that requires this result.

We emphasize that, rather than restricting FEMA's ability to furnish federal disaster relief assistance, our holding actually expands FEMA's options. Were we to hold that the discretionary function exception barred breach of contract claims premised on contracts voluntarily entered into by FEMA and lessors like Pine Isle, parties naturally would be reluctant to contract with FEMA out of fear that the Stafford Act would bar claims arising out of FEMA's non-performance. By avoiding this disincentive, our holding helps FEMA contract with other parties in the course of disaster relief assistance.

## II. Collateral Estoppel

◼ In the alternative, the Court of Federal Claims held that Pine Isle was collaterally estopped from re-litigating that the discretionary function exception of the Stafford Act did not bar its contract claim. The trial court noted the disposition of *Dureiko I,* in which Pine Isle brought suit against Phillips & Jordan for negligently cleaning up the Park and against the United States for negligently supervising and monitoring Phillips & Jordan's activities. The district court in *Dureiko I* dismissed Pine Isle's claims against the government as barred by the discretionary function exceptions of the FTCA and the Stafford Act. *See Dureiko I,* 1996 WL 825402, at *2. Although acknowledging that the claims against the government in *Dureiko I* sounded in tort, the Court of Federal Claims construed the critical issue to be "whether the acts of FEMA and the Corps in supervising the same contractor, Phillips & Jordan, while completing disaster relief during the aftermath of Hurricane Andrew, [fell] under the discretionary function exception contained in the Stafford Act." *Dureiko II,* 42 Fed.Cl. at 580.

The trial court continued by holding that "the application of the discretionary function language in the Stafford Act was previously and fully litigated and resolved in [*Dureiko I* ]." *Id.*

Pine Isle disputes the trial court's holding of collateral estoppel. Pine Isle emphasizes that collateral estoppel is appropriate only if:

(1) the issue to be decided is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the parties had a full and fair opportunity to litigate the issue in the first action.

*Arkla, Inc. v. United States,* 37 F.3d 621, 624 (Fed.Cir.1994). Pine Isle contends that *Dureiko I* did not decide the application of the Stafford Act's discretionary function exception to its *contract* claim, since *Dureiko I* only involved *tort* claims. Pine Isle notes that it could not have brought a breach of contract claim premised on a contract between FEMA and itself in *Dureiko I,* since the district court would have lacked jurisdiction over such a claim.

The government responds that the Stafford Act immunizes the government against liability for "*any claim* based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency," 42 U.S.C. § 5148 (emphasis added), and does not distinguish between tort or contract claims. Consequently, though Pine Isle only asserted a claim for negligence against the government in *Dureiko I,* the government deduces that the district court must have been deciding whether the Stafford Act bars *all claims* against the government for alleged damages resulting from its debris removal efforts. The government argues that this issue was not only litigated in *Dureiko I,* but was also

necessary to the resolution of *Dureiko I*, since it determined the district court's jurisdiction over Pine Isle's tort claims against the government.

■ We review a trial court's application of collateral estoppel *de novo*. *See Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1376 (Fed.Cir.1999). We agree with Pine Isle that the Court of Federal Claims incorrectly applied the doctrine of collateral estoppel. The trial court framed the dispositive issue too broadly, since the only claims at issue in *Dureiko I* sounded in tort. The critical issue in *Dureiko I* was not "whether the acts of FEMA and the Corps in supervising the same contractor, Phillips & Jordan, while completing disaster relief during the aftermath of Hurricane Andrew, [fell] under the discretionary function exception contained in the Stafford Act," but whether a *tort claim premised* on the acts of FEMA and the Corps in supervising Phillips & Jordan fell under the discretionary function exception contained in the Stafford Act. As Pine Isle correctly notes, the district court in *Dureiko I* would have lacked jurisdiction over Pine Isle's contract claim against the government, as its claim for damages exceeds the amount prescribed by 28 U.S.C. § 1346(a)(2) (1994) for jurisdiction before the district court. Thus, contrary to the government's assertion, *Dureiko I* could not have decided the application of the Stafford Act's discretionary function exception to Pine Isle's contract claim, since this issue would have been irrelevant to the question of the district court's adjudication of Pine Isle's tort claims.

## III. Release

■ The Court of Federal Claims also dismissed Pine Isle's claims in light of the undated, general release signed by Dureiko. The trial court rejected Pine Isle's attempt to circumvent the release by its analogizing this case to *Sunrise Village Mobile Home Park v. Phillips & Jordan, Inc.*, No. 94–0101, 1996 U.S. Dist. LEXIS 22374, at *1 (S.D. Fla. April 23, 1996) ("*Sunrise II* "). In *Sunrise II*, the district court held that identical language in a release signed by another mobile home park operator did not bar negligence claims against Phillips & Jordan under Florida state law. The Court of Federal Claims distinguished *Sunrise II* as involving negligence claims against a contractor, not contract claims against the government. *See Dureiko II*, 42 Fed.Cl. at 577.

The Court of Federal Claims further held that Pine Isle had made a "knowing election" to utilize the services offered by the United States to clean up their site and knowingly signed a general release. *See id.* at 577–78. The trial court noted that, "[a]s a general rule, the execution of an unrestricted release, pursuant to a government contract, bars the later assertion of claims against the government with respect to that contract." *Id.* (quoting *Dairyland Power Coop. v. United States*, 27 Fed.Cl. 805, 811–12 (1993), *aff'd*, 16 F.3d 1197 (Fed.Cir.1994)).

The trial court rejected Pine Isle's defense that it had entered into the release under duress or as the result of undue influence. The trial court found that:

> It is significant that the plaintiffs [sic] argument that this release was entered into under duress or imposed by exercise of undue influence is unsupported by the record and is contrary to the fact that Pine Isle management could have rejected the offer to lease lots to FEMA. Moreover, the plaintiffs' affirmative statement in the pleadings that the cleanup costs would have passed through to mobile home owners and insurance carriers, likewise undermines the plaintiffs' contentions of duress and undue influence because this fact is demonstrative of the alternatives for the

cleanup of Pine Isle that were available to the plaintiffs.

*Dureiko II,* 42 Fed.Cl. at 577.

On appeal, Pine Isle continues to assert the applicability of *Sunrise II.* Pine Isle also argues that Dureiko, acting on behalf of Pine Isle, did not intend to release the government's obligation to comply with the standards reflected in Tasks # 4 and # 12. Rather, Pine Isle alleges that Dureiko only intended to release the government from liability to tenants for removing their personal property (i.e., the damaged mobile homes and their contents) from the Park. According to Pine Isle, the government represented to Dureiko that he, as owner of the Park, was the only individual who could give them permission to remove the "debris," i.e., the tenants' personal property.

Pine Isle argues that that the release is unenforceable for several reasons. For example, it contends that the government "duped" Dureiko into signing the release, rendering the release unenforceable as unconscionable and the product of undue influence and duress. Pine Isle also contends that the release cannot bar its breach of contract, taking, or inverse condemnation claims, since they had not yet matured when the release was executed. *See Xanadu of Cocoa Beach, Inc. v. C & C Dev., Inc.,* 822 F.2d 982, 986 (11th Cir. 1987).

The government responds that the release plainly extinguishes Pine Isle's breach of contract claim. The government emphasizes that the release discharges the government of liability from "all claims" arising out of FEMA's cleanup efforts, which it asserts must include those arising under the alleged contract, as well. The government notes that exceptions to releases are strictly construed in favor of the government. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1394 (Fed.Cir.1987). The government distin-

guishes *Xanadu* as merely holding that a release does not bar suits involving activities not contemplated by the release. According to the government, the release in this case clearly contemplated Pine Isle's taking and inverse condemnation claims, since the release was given "[i]n consideration for ... the federal government's undertaking the demolition of mobile homes and removal of the debris from the [Park]."

The government disputes Pine Isle's assertions that the release is unenforceable. The government notes that the only circumstances that might justify overriding a release are mutual mistake, fraud or duress, or where the conduct of the parties makes clear that a full release was not contemplated. The government argues, however, that none of these circumstances are present here.

 We interpret the release according to federal law. *See Prudential Ins. Co. of Am. v. United States,* 801 F.2d 1295, 1298 (Fed.Cir.1986) ("It is well settled that contracts to which the government is a party ... are normally governed by federal law, not by the law of the state where they are made or performed."). In interpreting the release, we first ascertain whether its language clearly bars the asserted claim. *See King v. Department of the Navy,* 130 F.3d 1031, 1033 (Fed.Cir. 1997). If the release is ambiguous as to its scope of coverage, we construe its language to effect the parties' intent at the time they executed the release. *See id.* The parties' intent is a question of fact, *see Fort Vancouver Plywood Co. v. United States,* 860 F.2d 409, 414 (Fed.Cir.1988), and on review of a grant of a motion to dismiss we must accept the non-moving party's factual allegations regarding the parties' intent as true, *see Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1183 (Fed. Cir.1988) (reversing a grant of summary judgment in view of extrinsic evidence of

intent, which raised a question of material fact regarding contract interpretation). In the absence of sufficient factual allegations supporting the parties' mutual intent, we construe the ambiguous contract provision against the drafter, unless the ambiguity is patent. *See Studiengesellschaft Kohle, M.B.H. v. Hercules, Inc.,* 105 F.3d 629, 634 (Fed.Cir.1997); *cf. Triax Pacific, Inc. v. West,* 130 F.3d 1469, 1475 (Fed.Cir.1997) (discussing patent ambiguity doctrine). The interpretation of the release at issue is a question of law, which we review *de novo. See King,* 130 F.3d at 1033.

The release extinguishes "all claims of whatever nature arising from such demolition and removal." Although the government fervently argues that this language plainly encompasses Pine Isle's breach of contract, taking, and inverse condemnation claims, we are not so certain. The phrase "such demolition and removal" refers to the earlier phrase "the federal government's undertaking the demolition of mobile homes and removal of *the debris* from the above mobile home park." (emphasis added). It is unclear whether this phrase covers only the demolition of mobile homes and the subsequent removal of *mobile home debris,* as Pine Isle suggests, or the demolition of mobile homes and the removal of *any debris,* as the government maintains.

Furthermore, FEMA's alleged contract with Pine Isle included obligations extending far beyond mere mobile home demolition and mobile home debris removal. For example, Task # 12, which allegedly reflects the standards for utility repair agreed upon by the parties, provides that "[t]he Contractor shall perform all necessary work to inspect, remove, repair, or replace to pre-Andrew condition in accordance with current codes all sewer, water, and electric facilities affecting the 100 lots assigned to the Federal Emergency Management Agency." It is unclear whether the phrase "all claims of whatever nature arising from such demolition and removal" also includes claims relating to FEMA's restoration obligations, since activities in furtherance of such obligations are not plainly related to mobile home "demolition" or "debris removal."

Given these ambiguities, we turn to the parties' extrinsic evidence of intent to aid our interpretation of the release. Pine Isle alleges that Dureiko only signed the release because FEMA represented that only he, as owner of the Park, could release the government from liability to tenants for removing their personal property. Consequently, Dureiko only intended to release the government from liability arising from FEMA's disposal of this property (e.g., their mobile homes and personal belongings). Pine Isle emphasizes that it could not have intended to release FEMA of its obligation to comply with the terms of Tasks # 4 and # 12, having vigorously bargained for them only shortly before. The government offers nothing to dispute Dureiko's intent in signing the release.

Accepting (as we must on review of a grant of a motion to dismiss) Pine Isle's allegations regarding the parties' intent as true, we hold that the Court of Federal Claims improperly dismissed Pine Isle's claims as barred by the release. If Pine Isle's allegations regarding FEMA's representations and Pine Isle's intent in signing the release are correct, the release will bar only claims arising from FEMA's demolition of the mobile homes and its removal of the mobile homes and their contents from the Park; it will not bar Pine Isle's claims for breach of contract, taking, or inverse condemnation to the extent that such claims are predicated on conduct outside the demolition and removal of the Park tenants' property.

The alleged contract bolsters Pine Isle's representation of the parties' intentions in signing the release, and thus supports its narrow interpretation of the release. As

allegedly reflected by Tasks # 4 and # 12, the contract provided very specific terms directed to the cleanup methods and the Park's restoration to its pre-Andrew condition. Again, accepting Pine Isle's allegation that such a contract existed, we cannot hold that the release could have eliminated any liability for breach of the alleged contract terms. To so hold would utterly eviscerate the contract. It would have been nonsensical for Pine Isle, fearful that Phillips & Jordan or another cleanup contractor might destroy its property, to aggressively negotiate extremely detailed terms for the Park's cleanup and restoration to pre-Andrew condition, and then almost immediately relinquish its right to enforce these terms by signing a release extinguishing claims arising under these terms. On remand, the Court of Federal Claims must determine whether the extrinsic evidence supports Pine Isle or the government's interpretation of the release.

 Although we agree with Pine Isle that the release may not bar its claims, we reject Pine Isle's assertion that the release is unenforceable because Dureiko signed the release under duress or as the result of undue influence. To render the release unenforceable for duress, Pine Isle must establish that (1) it involuntarily accepted FEMA's terms, (2) circumstances permitted no other alternative, and (3) such circumstances were the result of FEMA's coercive acts. *See Employers Ins. of Wausau v. United States,* 764 F.2d 1572, 1576 (Fed.Cir.1985). The circumstance that Pine Isle alleges permitted it no other alternative but to sign the release was the destruction caused by Hurricane Andrew, but this circumstance did not result from FEMA's coercion. Since Pine Isle cannot establish all of the elements for a finding of duress, the trial court appropriately rejected this defense. Pine Isle

similarly fails to allege any facts to support its bare allegation that it signed the release under "undue influence," e.g., that FEMA somehow misused a confidential relationship with Pine Isle to the government's advantage. *See Goldman v. Bequai,* 19 F.3d 666, 675–76 (D.C.Cir.1994).[6]

We are similarly unpersuaded by Pine Isle's argument that, under *Xanadu,* the release cannot bar its claims since they had not matured when the release was executed. In *Xanadu,* the Eleventh Circuit held that a general release did not bar the defendant's counterclaims for fraud and for specific performance of a contract against the plaintiff, a party to a joint venture. The court reasoned that the fraud claim against the plaintiff could not have accrued until after the release had been executed. With respect to the claim for specific performance, the court noted that the release mentioned only the plaintiff, and thus did not operate to extinguish claims against the joint venture itself. Because the plaintiff had assumed the obligations of the joint venture upon its dissolution, the claim for specific performance against the plaintiff survived the release. Thus, *Xanadu* involved (1) a claim not contemplated by a release against a signatory to the release, and (2) a claim contemplated by a release against a non-signatory to the release. Where the release contemplates both the claims at issue and the party against whom the claims are released, the rationale of *Xanadu* is inapplicable. Here, depending upon the parties' intentions underlying the relevant release language, the release may contemplate (and therefore bar) its contract, taking, and inverse condemnation claims against the government arising from FEMA's "debris removal" activities.

## IV. Taking and Inverse Condemnation

 The trial court also held that Pine

6. We decline to address Pine Isle's allegation that the release is unconscionable, since the

trial court did not reach the legal adequacy of this assertion.

Isle's taking and inverse condemnation[7] claims were legally inadequate. The trial court reasoned that a taking claim must be premised upon a government action that is either expressly or impliedly authorized by a valid enactment of Congress, *see Short v. United States,* 50 F.3d 994, 1000 (Fed.Cir. 1995), but Pine Isle had not so alleged; rather, Pine Isle asserted that FEMA's actions were contrary to FAR and the Corps's Quality Assurance Plan. Alternatively, Pine Isle asserted that FEMA's actions constituted a taking because they were contrary to FEMA's obligations under the alleged contract. The trial court responded to this assertion by noting that the appropriate remedy for FEMA's actions lay in a breach of contract claim, not in a taking claim. *See Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786, 818 (Ct.Cl.1978). The trial court also reasoned that to establish a taking claim, the party must establish that the government intended to take private property. *See id.* In this case, however, Pine Isle did not allege that FEMA unilaterally intended to "take" Pine Isle's property. On the contrary, it sought only to rent Park sites under a consensual contract.

Pine Isle does not directly respond to the trial court's reasons for holding its taking and inverse condemnation claims to be legally inadequate. Rather, Pine Isle continues to baldly assert that its taking and inverse condemnation claims are viable.

■ Pine Isle's poor articulation of its taking and inverse condemnation claims makes it extremely difficult to determine their legal adequacy. Nonetheless, we understand the essence of Pine Isle's allegation to be that FEMA's alleged destruction of the Park constituted a taking. As the trial court correctly noted, Pine Isle fails to point to any valid enactment of Congress that authorizes FEMA's destructive actions, but instead emphasizes that FEMA acted contrary to FAR and the Corps's Quality Assurance Plan. Pine Isle's alternative contention that FEMA violated the Fifth Amendment by breaching its contract with Pine Isle is also deficient, since FEMA's conduct here would only appropriately give rise to a claim under contract law, not the Fifth Amendment. *See id.* ("Remedies for violation of any of their lease rights by plaintiffs must be directed at defendant in its proprietary capacity and not in its sovereign capacity."). Finally, Pine Isle makes no allegation that FEMA intended to take the Park, but argues only that FEMA's conduct should have conformed to the standards mandated by the alleged contract. Pine Isle's failure to allege intent is also fatal to its taking and inverse condemnation claims. *See id.* ("The interferences with plaintiffs' lease rights were grounded on matters that, at times material herein, bespoke an effort to operate within the framework of the lease and applicable regulations, not to take plaintiffs' property rights."). We therefore hold that the trial court properly dismissed Pine Isle's taking and inverse condemnation claims as legally inadequate.

## CONCLUSION

The Court of Federal Claims improperly dismissed Pine Isle's breach of contract claim as barred by the discretionary function exception of the Stafford Act, the doctrine of collateral estoppel, and Pine Isle's undated release, but appropriately dismissed Pine Isle's taking and inverse condemnation claims as legally inadequate.

---

7. The term "inverse condemnation" is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).

The case is remanded for further proceedings consistent with this opinion.[8] Accordingly, we

*AFFIRM–IN–PART, REVERSE–IN–PART,* and *REMAND.*

### COSTS

Each party to bear its own costs.

---

**8.** We do not intimate that a trial is required. If, for example, Pine Isle cannot prove a contract requiring FEMA to comply with the standards allegedly reflected in Tasks # 4 and # 12, summary judgment may be appropriate.